Yazoo & Mississippi Valley Railroad Company *v.* Louis W. Slaughter et al.

[45 South., 873.]

**1.** Master and Servant. *Existence of relation. Employe.*

Where the keeper of a railroad pumping station, desiring to absent himself for a short time, placed his fourteen year old son, by consent of the superintendent of the road, temporarily in charge of the station and left the premises, the son was thereby made an employe of the railroad company.

**2.** Same. *Suit for wrongful death. Burden of proof. Engagement in master's business.*

Where a boy, the temporary keeper of a pumping station, drowned by falling through the defective roof of the tank, went at one time on the day of his death upon the roof in the performance of duty and at another time on the same day was engaged on the roof in throwing stones at passers-by, the burden of proof is on the plaintiffs, suing for his alleged wrongful death, to show that at the time of his fall he was engaged in the performance of duty.

**3.** Same. *Father's contributory negligence.*

The fact that the father of a fourteen year old boy permitted him to take charge of a railroad pumping station, by the consent of the company, does not preclude him from recovering of the railroad company for the son's death while in the performance of duty to the company caused by falling through the rotten roof of the water tank belonging to the station.

**4.** Same. *Place of injury. When not a determinative factor.*

Where a servant while in the performance of his duty fell through the roof of a water tank because of its rottenness, the distance of the part of the roof through which he fell from the direct course over which he had to pass in doing his work, not exceeding seven and one-half feet, is not a determinating factor in deciding the liability of the master.

From the circuit court of Claiborne county.

Hon. Thomas G. Birchett, Special Judge.

Slaughter and wife, appellees, were plaintiffs in the court

below, and the railroad company, appellant, was defendant there. From a judgment in plaintiffs' favor the defendant appealed to the supreme court.

The appellees sued the railroad company for recovery of damages because of the death of their infant son, Thomas Slaughter, who was drowned in a water tank of the railroad company. Louis W. Slaughter, one of the appellees, was an employe of the railroad company, having charge of the company's pump house and water tank in the town of Hermanville. The tank, a large wooden structure, cylindrical in form and capable of holding several thousand gallons of water, was elevated on posts some distance above the ground. It had a slanting wooden roof covered with tar and gravel. A ladder extended from the ground to the upper outside edge of the tank, rendering access easy to a man-hole in the roof near the outer edge. The amount of water in the tank was shown by an index attached to a float, and the discharge of the water was regulated, in the usual way, by a lever. On the day of the casualty the appellee, Thoma Slaughter, had occasion to leave Hermanville on personal business, and left his fourteen-year old son, Thomas, in charge of the pump and tank; and, as appellee passed through Harriston, on the train, he saw the foreman of the company's water department, by whom he was employed and to whom he was accountable and who had full power to hire and discharge employes for the company in such department, and stated to him that he was compelled to go to Baton Rouge on business, and had left his son and a negro in charge of the pump and tank, and received the reply, "all right, in case of business, go ahead." The son was familiar with the duties of the position he was called upon to fill, and had been left in charge of the pump and tank, with the knowledge of the water-foreman, on former occasions. The son was upon the company's pay-roll, under a false name to obscure his infancy. Being thus left in charge of the tank, the boy climbed to its roof, where, according to the undisputed testimony of different eyewitnesses, he spent

some time in walking about on the roof and throwing stones at passers-by. The evidence did not disclose whether he was engaged in the business of the company at the time he fell through the roof of the tank and met his death, although, according to the testimony of one witness, the boy went on the roof to adjust the float and lever, but how long before his death the witness could not say. There was evidence to show that the roof of the tank was rotten. The jury found a verdict in favor of appellees for $3,500, which the trial court required to be reduced to $2,350, as a condition to the denial of a new trial.

*Mayes & Longstreet* and *Chalmers Alexander,* for appellant.

Slaughter, the father and appellee, was an employe of the railroad company, in charge of the pump house and water tank. He admits in his testimony that if he had seen anything about the pumping plant out of repair it was his duty to repair it and further states that the agents of the railroad company would be poor inspectors if they could not have discovered the need of repairs on the tank. If the father was in charge of the tank, and there were repairs needed which could be easily seen and it was the father's duty to make them, he is not in position to claim recovery for his son's death, irrespective of anything in the state constitution or statutes, the negligence being his own.

While it appears that the son, who was only fourteen years and a few months old, worked around the pump house occasionally and while, in a vague sort of way it appears that there was a name on the railroad company's pay-roll representing the boy as employe of the company, it still appears that the father did not consider the son as an employe of the railroad company, for his testimony is to the effect that the son "occasionally helped." The evidence shows that the boy sold newspapers, worked occasionally for other parties, did errands around his home, and was not habitually at the pump house and tank.

The tank was covered by a slanting top or roof, dangerous

to walk on under any circumstances.   The railroad company could not reasonably anticipate that the tank's roof would be made the playground of any person.   The roof was high in the air and of only seven feet six inches raduis.   From the ground a ladder led to the outside top of the tank, the upper end of which stopped at the outer edge of a man-hole in the roof.   Inside the tank a smaller ladder led down into its interior.   The manhole was of sufficient size to admit the body of a man, and its edge was strengthened by a frame-work so as to be stronger than the rest of the roof.   The only purpose for which a person would have to go to this damp and dark retreat would be to see that the float (connected with the index) was in working order, or to arrange the lever which, on the pull of the fireman or engineer of a passing engine, opened the valve and allowed the passage of water into the tender of the locomotive.   Only persons of cool heads could be expected to ascend the ladder leading to the tank.

An examination of the roof of the tank, made after the unfortunate tragedy, showed that the hole through which the boy fell was in a part of the roof or top where any employe attending strictly to his business would have no occasion to be.   When the court considers the undisputed evidence as to the actions of the boy in playing around on top of the tank and from its roof throwing stones at unsuspecting passers-by, the conclusion must follow that, even if the boy were an employe, he was acting beyond the scope of his duties when he sustained the injury resulting in his unfortunate demise.   Although one witness, and one only, Tillman, testified that the boy went up the ladder to fix the lever and float, he did not testify how long this was before the boy fell through the roof.   The hole through which the boy fell was five feet or more away from the manhole.   The hole was in a part of the roof where the employe, in ascending the ladder and effecting entrance into the tank through the man-hole to fix the lever, could not reasonably be at any time during the performance of his duty.   It was no

part of that duty for the employe to walk about and over the roof, and use it for an observatory of the neighborhood.

It was held in the *Daniel's case*, 73 Miss., 258, 19 South., 830, that where plaintiff used an appliance in an improper manner for a use not necessary, he could not recover for injury caused thereby.

An employe of an oil mill, in falling from a roof, caught at a wooden "horse," which, being of insufficient strength to withstand the strain, broke under his weight, and it was held that, as he sought to use it for an improper use, a peremptory instruction should have been given in favor of the defendant. *Bell* v. *Oil Company*, 77 Miss., 387, 27 South., 382.

The master is not liable for injury to an employe, who, for his own convenience, uses other than the proper way or method of procedure. *Morehead* v. *Railroad Company*, 84 Miss., 112, 36 South., 157.

Where there is a safe and an unsafe way of doing a thing, and the servant knows or should know it and yet chooses the unsafe way, he cannot recover from his master for the injury. *Schoultz* v. *Mfg. Company*, 112 La. Ann., 568.

Sec. 193 of the state constitution gives no right to the appellees to sue in this case. For, under the decision of this court in *Bradford Construction Co.* v. *Heflin*, 88 Miss., 314, 42 South., 174, the section is applicable only when the peril comes by or from the hazardous nature of the business of operation of railroad trains. Did any railroad train in any way, directly or indirectly cause the boy's death? If the tank had been the property of some private individual, and the relationship of the boy and his father to such individual had been the same as their present relationship to the railroad company, would sec. 193 of the constitution have been applicable? The answer is self-evident.

*J. McC. Martin*, for appellees

"Every employee of a railroad corporation shall have the same rights and remedies for an injury suffered by him from

the act or omission of the corporation or its employees as are allowed to other persons not employees" . . . "Knowledge by an employee injured of the defective or unsafe character or condition of any machinery, ways or appliances . . . shall not be a defense to an action for injury caused thereby" . . . "When death ensues from an injury to an employee an action may be brought in the name of . . . the husband or father for the death of a child" etc. Code 1906, § 4056.

"Whenever the death of any person shall be caused by any real, wrongful or negligent act, or omission, or by such unsafe machinery, way or appliance, as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, and such deceased person shall have left a . . . father or mother, . . . the person or corporation, or both, that would have been liable, if death had not ensued, . . . notwithstanding the death, and the fact that death is instantaneous shall, in no case, affect the right of recovery. The action for such damages may be brought in the name of the . . . parent for the death of a child, . . . or all parties interested may join in the suit . . . In such action the party or parties suing shall recover such damages of every kind to any and all parties interested in the suit, taking into consideration all damages of every kind to the decedent, etc. . . . This section shall apply to all personal injuries of servants or employees received in the service or business of the master or employer, where such injuries result in death," etc. Code, 1906, § 721.

An action can be maintained under the section by the mother, a sole surviving parent, for the death of her son, an employe, because of the negligence of the railroad company in failing to provide safe machinery and appliances, such negligence being that of the company itself, and not the negligence of a co-employe. The ground of liability existed before the

constitution of 1890 and is wholly independent of it. *White* v. *Railroad Co.,* 72 Miss., 12, 16 South., 248.

A steam shovel operated by defendant railroad company was defective, in that the track bolsters holding the circle of the crane had sunk, owing to the rotten condition of the timbers supporting it. . . . After the accident the shovel was taken apart, and it was then found that the wood supporting the circle was rotten so that it crumbled. Held sufficient to establish negligence on the part of the railroad company. *Southern Railway Co. v. Wiley,* 88 Miss., 825, s. c., 41 South., 511.

A servant does not assume the risk of injuries resulting from defects in the instrumentalities provided by the master which are not obvious. *Southern Railway Co.* v. *Wiley, supra.*

Where plaintiff had no knowledge of the defective condition of a steam shovel crane, on which he was employed, and could not have discovered the same, except by taking off the circle; and had not heard a conversation between defendant's superintendent of machinery and its road master, concerning the defective condition of the crane, he was not guilty of contributory negligence in continuing to work thereon. *Ibid.*

Whatever may be the duty of the master as to the methods to be adopted for ascertaining whether the appliances furnished are suitable and safe, due care requires him, specially in the use of dangerous appliances, or where the service in which they are used is dangerous, either by himself or some other selected for that purpose, in either case, one competent and qualified to inspect and look after the condition of such appliances, and see that they are kept in repair. This duty is personal to the master and must be continuously performed by him, or by those whom he selects to represent him. And he is liable for its neglect whether by his representative or by himself, the danger resulting therefrom not being assumed by his employees as incidental to their employment. *Budge* **v.**

*Morgan's L. & T. R. Co.,* 32 South., 541; *Gaulden* v. *Kansas City R. Co.,* 30 South., 890; *Williams* v. *South & N. A. R. Co.,* 9 South., 78; *Stuckie* v. *Orleans R. Co.,* 23 South., 342.

That appellant was guilty of the grossest negligence in permitting the top of its water tank to become utterly rotten cannot be denied. That it was also grossly negligent in not having the top inspected and kept continuously safe, cannot be denied. That there was but one way to reach the lever on top of said tank, which was by the roof or top of same is not, and cannot be, denied. Hence, it should have been kept in a safe and secure condition, with no hidden danger such as this record discloses. Therefore the death of appellees' son resulted from the negligent omission of appellant, as well as from unsafe appliances. Would the son of appellees have been able to maintain an action and recover damages in respect thereof, if death had not ensued? The authorities cited clearly show that he could have done so. Then appellees are given the right. It is given by virtue of Code 1906, § 721, above quoted, as well as independently of it, as is determined in the case of *White* v. *Railroad Company,* 72 Miss., 12, 16 South., 248. The right of action, too, is broadly given in Code 1906, § 721, in the following words:—"This section shall apply to all personal injuries of servants or employees received in the service or business of the master or employer, where such injuries result in death."

The father of the deceased, had nothing to do with inspecting or repairing the tank, this not being in the scope of his duties. Hence, the contention of appellant that the father, because of his relationship to the railroad company, is estopped to make claim for recovery because of the death, has no value in law. How did the negligence of the father in any way contribute to the death of the son? His son was an employe of the company, and was acting within the line of his duties when he met his death. The cause of the death was simply that the roof of the tank was rotten. As regards the claim by the railroad company that the boy was not attending to duty but was

engaged in throwing stones at passers-by, we merely say that this was passed upon by the jury, and the court will not consider such contention seriously.

Touching the extent to which infants are chargeable with contributory negligence, the court is referred to 1 Labatte on Master & Servant, §§ 244, 251, 291, 348, 400.    The facts in each case must determine whether the infant shall be placed under the rule as to contributory negligence.    There is no fixed and charted path on the roof of the tank to show this fourteen year old boy where he should, and where he should not, go in the discharge of his duties.    Nor is it shown by appellant that he was not within the scope of his duties when he met his death.

As regards the contention of appellant that sec. 193 of the constitution is not here applicable, we beg to say that, while in the *Heflin Case,* 88 Miss., 314, 42 South., 174, this court stated that the section applied only when the peril came from or by the inherently hazardous nature of the business of operating a railroad train, yet, a railroad locomotive cannot be operated without steam, and the very essential of railroading consists in keeping a proper water supply.    There can be no appliance of greater importance than those necessary to this end.    And certainly such appliance comes within the meaning of the words, "machinery, ways or appliances," used in the said constitutional section.

But, aside from the appellees' right to sue under the constitutional section, it is apparent, as above mentioned, that the father and mother have ample right to prosecute their suit under Code 1906, § 721, Lord Campbell's Act, as amended by our statute law.

WHITFIELD, C. J., delivered the opinion of the court.

The determining question in this cause is whether the unfortunate little boy who lost his life fell into the tank through the rotten roof at the time when he was engaged in and about his master's business, or at a time wholly disconnected from

any engagement about his master's business, when he was engaged solely in amusing himself on the roof of the tank.    The crucial question is when, exactly, did he fall through this roof to his death, and what was he engaged in doing at that time? On the one hand, it may be said to be clear that he was an employe of the appellant company, on the facts shown in this record; and on the testimony of Thomas Tillman it is also clear that he went up on top of this roof for the purpose of adjusting the float and the lever, and that he was engaged in so adjusting this float and this lever when seen by said Thomas Tillman; but Tillman fails utterly to show when he saw him, and it may be said that there is a total failure on the part of the plaintiffs appellees here, to show anywhere in this record at what time Thomas Slaughter, the boy, went up on top of this roof, or at what time he fell through this roof, or whether he was engaged in and about his master's business, or in his own personal amusement only, at the time he so fell through the roof.

It is for the plaintiffs, if they would hold the defendant liable, to show that the boy came to his death by falling through this roof while engaged in and about his master's business.    It will not do, on the one hand, for the company, on this record, to contend that he was not an employe, or that the father was guilty of any contributory negligence which would bar his suit, or that it was not the duty of the company to have repaired, and kept in repair, its roof over the tank; and no more will it do, on the to her hand, for the plaintiffs to contend, on this very unsatisfactory record, that any clear case of liability is shown here, to wit, that the deceased fell through the roof to his death at a time when he was engaged about his master's business. The testimony in the case leaves it entirely uncertain when he so fell through, and what he was doing at that time, and yet these are the crucial inquiries in the case.

The court instructed the jury for the defendant in instructions Nos. 2, 3, and 5 as follows:

"(2) The court instructs the jury for the defendant that if

they believe from the evidence that the said Thomas H. A. Slaughter, at the time he met his death, was upon the roof of the tank for the purpose of play or amusement, or· of tossing stones at passers-by, or for any other purpose except to arrange: the float or lever, then they shall find for the defendant."

"(3) The court instructs the jury for the defendant that if they believe from the evidence that the said Thomas H. A.. Slaughter remained on top of said tank for the purpose of play or amusement, or of tossing stones at passers-by, or for any other purpose not connected with the lever or float, they shall find for the defendant, notwithstanding the fact that they may believe that he went upon said tank in the first place in the discharge of his duty."

"(5) The court instructs the jury for the defendant that, if they believe from the evidence that that part of the roof of the tank through which the said Thomas H. A. Slaughter fell was not a part of the roof over which he would have to pass in going to or from the ladder to the lever or manhole while· engaged in his duties with reference to said lever or float by the nearest convenient route, then they shall find for the defendant."

It will be seen that these three instructions, grouped, told the jury that if they believed from the evidence that Thomas Slaughter at the time he met his death was upon the roof for the purpose of playing, etc., or for any other purpose except to· arrange the float and lever, then they should find for the defendant, notwithstanding that they might believe he went upon the tank in the first place in the discharge of his duty; and, further, that if they believed from the evidence that that part of the roof of the tank through which the said Thomas Slaughter fell was not a part of the roof over which he would have to pass, in going to or from the ladder to the lever or manhole while engaged in his duties with reference to said lever and float by the nearest convenient route, they should find for the defendant.

The court clearly had the just distinction in its mind, and sought properly to direct the jury to solve the case by solving the question of whether, at the time he met his death, he did so in the discharge of his duty to his master, or whilst engaged in play and sport on his own account. There was testimony for the defendant that the point of the roof through which he fell was some five feet from the path he ought to have pursued in going to the lever, if he went to the lever; and there was abundant testimony that he was dodging about on top of the roof, throwing stones at passers-by, during a part of the afternoon, engaged at this time, manifestly, in amusing himself on his own account in the pastime of throwing stones from the roof at different parties. How much of his time was thus spent, when he adjusted the lever and the float, or how long he was engaged in doing that which was his proper business, the testimony wholly fails to disclose. It discloses that he was on the roof from two to three hours. He would not be held, of course, to too nice a calculation about what line of travel he would pursue in going from the top of the ladder to adjust the lever or the float, if only he can show that he pursued a path on the roof to reach and adjust the lever or the float, and fell in whilst he was so adjusting said lever or float—in other words, whilst engaged in and about his master's business. We will not disturb a finding in his favor on any nice calculation as to whether within this radius of seven and one-half feet he fell through one part of the roof or the other. That is not the determining question. The question is: Was he, at the time he fell in, engaged in and about fixing this lever or float? Whether, whilst so engaged, he fell through one part of the roof or the other, is a mere accident of the situation, and not a determining factor.

If the evidence shall show, on a new trial, that he fell in through this roof whilst engaged in and about his master's business, a recovery ought not to be disturbed because he fell through one part or the other of the roof; there being but the small radius of seven and one-half feet around which he could move.

Substantial rights are not to be pared away by such infinitesimal calculations; but if the evidence shall show on a new trial that he fell through this small roof, in one place or another, whilst engaged in his own independent pastime of throwing stones at passers-by, then there should be a peremptory instruction to find for the defendant, and it is to this question that the testimony on the new trial should be addressed, carefully and completely, that the cause may turn on its real point, and turn rightly on a fully developed case, so that there may be such full light as will disclose the truth on this point.

Because the testimony fails to show that he was engaged in his master's business at the time he fell in, the judgment is reversed, and cause remanded.

*Reversed and remanded.*