## S. H. KRESS & CO. *v.* MARKLINE.

[77 South. 858, Division A.]

1. DEATH. *Evidence. Admissibility. Harmless error.*
In a suit by a widow for the death of her husband caused by his falling down. an elevator shaft in a store while a customer therein, testimony by the widow that her home had not been paid for was inadmissible, but the admission of such testimony was harmless as the jury could not have been misled thereby.

2. DEATH. *Evidence. Admissibility.*
In a suit by a widow for the death of her husband, testimony that deceased left life insurance was properly excluded.

3. NEGLIGENCE. *Evidence. Admissibility.*
In a suit for death caused by falling down an elevator shaft in a store in which deceased was a customer, evidence that the elevator door had on former occasions been left open and other people had nearly received an injury thereby, was admissible for two purposes: one to show that the defect or manner of operation had continued for such a length of time that the owner had knowledge or was charged with notice of the defect or negligent manner of operation; the other to show the dangerous character, or nature of the place.

4. NEGLIGENCE. *Dangerous place. Notice.*
In such case where the testimony showed that the door of the elevator shaft was frequently left open, covering a period of time of practically two years, such testimony showed a negligent habit of operation of the elevator by the employees, and the length of time was sufficient to charge the owner with notice of the manner in which the elevator was operated.

5. SAME.
Being chargeable, therefore, with notice of the manner in which the elevator was operated, this manner of operation without the

elevator being guarded by gates or anything of that character made it a question of fact for the jury as to whether or not the owner was not negligent in properly guarding the same.

6. NEGLIGENCE. *Presumptions.*

In an action for death of a customer by falling down an open elevator shaft in a store, where the testimony showed that the sole purpose of deceased in going into the store was to purchase jardineres, that he was in the act of inspecting jardineres when the clerk left to get a ruler to measure one of these. That the jardinere he was inspecting was placed upon a shelf at the end of an aisle right by the elevator door, and there is no testimony either direct or circumstantial, that he, in going into the space in front of the elevator, abandoned his idea of inspecting jardineres. In such case in the absence of any testimony to the contrary, the presumption is that he was continuing his examination with a view of purchasing jardineres, when he fell into the open elevator shaft and was killed.

7. NEGLIGENCE. *Presumption. Burden of proof.*

In a suit for death caused by falling through an open elevator shaft, in the absence of any testimony to the contrary, the presumption is that the deceased exercised due care and caution for his safety. In this state, contributory negligence is an affirmative defense, and must be pleaded and proved by the defendant, unless the testimony introduced for the plaintiff affirmatively establishes contributory negligence of the plaintiff or the deceased.

8. NEGLIGENCE. *Evidence. Sufficiency.*

In this case which was a suit for the death of a customer by falling through the open door of an elevator shaft in a store, the court held that the evidence was sufficient to show that deceased fell through the open door of the elevator shaft while inspecting goods preparatory to purchasing them.

9. NEGLIGENCE. *Rights of invitees.*

An invitee in a store is not to be too circumscribed as to his movements while waiting for a clerk to exhibit goods. He has a right to inspect goods and frequent places used by other patrons of the store and provided for their use by the storekeeper.

10. NEGLIGENCE. *Instructions.*

In a suit for the death of a customer by falling into a store elevator shaft, the defendant could not complain of an instruction, that to warrant a verdict for plaintiff, deceased must have been killed while pursuing his intention to purchase goods and inspecting the goods; that the defendant's negligence proximately caused the injury; that there could be no recovery if deceased's negli-

gence solely caused the injury—or if deceased was injured in a
place to which he was not invited, or if a reasonable man would
not have anticipated that deceased would go where he did; that
the burden of proof was on plaintiff to show lack of reasonable
care that damages should be reduced, in proportion to contribu-
tory negligence; and that if the jury were unable to find with
certainty whether the negligence of deceased or of the defend-
ant caused the death, they should find for the defendant.

11. DEATH. *Excessive damages.*
A verdict for twenty-five thousand dollars to the widow and four
    minor children for the death of a healthy husband and father,
    with an expectancy of twenty-four and one-half years, who earned
    eighteen hundred dollars per year, and who suffered severely for
    twenty hours after falling into an elevator shaft, was not ex-
    cessive.

APPEAL from the circuit court of Lauderdale county.
HON. R. W. HEIDELBERG, Judge.

Suit by Mrs. Annie Markline, as administratrix of
George H. Markline, deceased. From a judgment for
plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*A. S. Bozeman, B. F. Cameron, Jr., Amis & Dunn* and
*Watkins & Watkins,* for appellant.

*Baskin & Wilbourn,* for appellee.

SYKES, J., delivered the opinion of the court.

The appellee, Mrs. Annie Markline, as administratrix
of the estate of Geo. H. Markline, deceased, filed suit in
the circuit court of Lauderdale county against the ap-
pellant, S. H. Kress & Co., and Chas H. Haney, for dam-
ages for the alleged wrongful death of Geo. H. Markline,
under the Acts of 1914, chapter 214, p. 280. The suit is
filed for the benefit of herself as widow and for the four
minor children of herself and deceased. The material
allegations in the declaration are that on the 15th day
of October, 1915, Geo. H. Markline went into the
store of the appellant, a corporation engaged in

conducting a mercantile business in Meridian, and having for sale articles of merchandise, and that the public generally was invited to come to its store to trade with it; that these goods, wares, and merchandise were displayed for sale on tables and counters and shelves in the store; that deceased went into the store of appellant for the purpose of purchasing some articles; that one of the clerks exhibited to him the articles he desired to inspect with the view of purchasing, and that while inspecting these articles he stepped or fell into an open elevator shaft, which shaft was located near the goods he was inspecting with the view to purchase; that the elevator shaft opened into the basement below; that the deceased fell into this opening, which the appellant carelessly and negligently caused to be left open without any guard, railing, covering, or warning as to its existence; that deceased had no notice or knowledge of the existence or condition of the elevator shaft; that the elevator shaft was four or five feet wide, and that the distance from this floor to the basement was eight or twelve feet; that the floor of the basement was a hard concrete floor; that, by reason of the direct and proximate cause of the negligence of appellant in maintaining this elevator shaft as it did, deceased fell to the floor of the basement and received serious injuries, which resulted in his death within about eighteen hours; that he suffered excruciating pain before death; that he was forty-four years old, with an expectancy of twenty-four and one-half years, was in good health, and was earning $1,800 a year. The amount of damages laid in the declaration was $50,000. The deceased left surviving him a wife and four minor children. To this declaration a plea of the general issue was filed by both defendants.

Notice was given under the general issue that defendants would prove that the elevator shaft into which the deceased fell was a freight elevator, used only for the

transportation of goods, wares, and merchandise, and not used for transporting persons or passengers; that it was located in an out-of-the-way place in the store, where no one but the servants and employees of the defendant were expected or invited to go; that the place was well lighted about the elevator shaft, so that persons of ordinary eyesight could easily and readily see whether or not the shaft was open or closed and all of the dangers incident thereto, if any; that on the door of the elevator shaft was a sign warning all persons of danger; that the deceased while a customer in the store, without any invitation and without any necessity for so doing, well knowing the risk and danger incident thereto, went behind the line of counters to a point in front of the elevator door, and thereby voluntarily exposed himself to the risk and danger of injury; that in so doing he acted for purposes of his own, at his own risk and upon his own responsibility, and without any authority or invitation from the defendants so to do; that deceased in so acting also negligently contributed to his injury which negligent conduct on his part was the proximate cause of his injury. The jury returned a verdict against the appellant, S. H. Kress & Co., in favor of the appellee in the sum of $25,000. A peremptory instruction in favor of the defendant Haney was granted in the lower court. Judgment was accordingly entered against this appellant, from which judgment this appeal is prosecuted.

The uncontradicted testimony showed that the appellant, S. H. Kress & Co., conducted, in the city of Meridian, a store commonly termed a 5 and 25 cent store, having for sale therein and selling to customers articles of various kinds and descriptions ranging in in price from 5 to 25 cents. It occupied in its business three floors of a building, the cellar, the main floor for the use of customers, and an upper floor. In the cellar and upper floor were kept merchandise which from time

to time was brought to the main floor principally by use of a freight elevator located in the southwest corner of the store. This elevator was for the use of employees only. It was operated by ropes in the nature of an endless chain. It could be moved either up or down by pulling on these ropes on any one of the three floors. If the elevator were on the main floor and a person on the upper floor wanted it, he would pull it up by pulling on the ropes, and *vice versa.* The elevator door on the main floor slid up and down on pulleys or ropes just as a window does. The door was of wood, about six feet high, and the opening extended to the floor. It was about four or five feet wide. The elevator was almost noiseless in its operation. Just north of the elevator were some steps leading up into an office. Immediately east of the steps, and about two and one-half or three feet therefrom, was a counter in the store. The distance from the west end of this counter to the elevator door is not exactly shown in the record, but is approximately six feet. There is an aisle running from the north of the store due south, passing the office steps and by the counter referred to, which leads to the south end of the store. In this south end of the store, and at the termination of this aisle, are three shelves, on the bottom two of which the appellant had stored at the time of the injury various kinds of jardinieres. The steps leading up into the office take up about half of the width of the aisle, leaving this aisle at its narrowest place, namely, between the end of the counter and the bottom of the steps, about two and one-half or three feet wide. It was to this counter that the deceased came upon the day of his death for the undisputed purpose of purchasing some jardinieres. There are in the store a number of counters, and on these counters are displayed various articles of goods, wares, and merchandise for inspection of customers and for sale. The elevator door extends almost from the steps south to the shelves upon

which were displayed the jardinieres. On the door of
the elevator were two signs, reading as follows: "This
elevator is for freight only. All persons except the
operator in charge are strictly forbidden to ride on
same. This order cannot be waived by any em-
ployee;" and "Danger!" The door of the elevator
opens on the aisle above mentioned. This aisle is per-
fectly level through the entire length of the store.
There was no gate or warning sign of any kind warn-
ing or prohibiting customers from going between these
steps and the end of the counter and to where the jar-
dinieres were stored or displayed. The uncontradicted
testimony showed that the deceased came to this counter
and stopped at a point about ten feet from the end
nearest the office steps. He asked the clerk to show
him some jardinieres. She showed him one, and he ask-
ed that she get a ruler to measure it. She placed the
jardiniere on the middle shelf near the elevator
door, and went to 'the hardware counter, about thirty
feet away, to get a ruler. At this time the elevator
door was partially open, the opening being from three to
three and one-half feet from the bottom of the floor. The
elevator was there, the floor of same being on a level
with the floor of the store. This clerk noticed that the
door was open, but did not call the deceased's attention
to it. At that time he was probably sixteen feet away
from the door. The testimony shows that the deceased's
visit to the store was for the purpose solely and alone of
buying from the appellant some jardinieres. The clerk
was gone just a few minutes, probably five or six. When
she returned the deceased had disappeared. It was be-
tween twelve and one o'clock when the deceased came
into the store. The uncontradicted testimony further
shows that a few minutes after twelve o'clock an em-
ployee of the store brought down from the upper floor
some merchandise to be taken out of the elevator. It
was his time to go to lunch, and that he left the goods
in the elevator, and attempted to pull the door down,

and went on out to his lunch. He only pulled the door about half down, leaving an opening of three or three and one-half feet as stated. While the clerk was gone for the ruler to measure the jardiniere a clerk on the upper floor pulled the elevator up to that floor. He states that he tried to ascertain before moving whether or not the door on the main floor was closed. He took the goods out of the elevator, put some more in, and returned with them to the main floor. He thinks this took him about five minutes. Shortly after he reached the main floor he and the clerk who had been waiting upon the deceased heard some groans from the cellar. An investigation was made at once, and the deceased was found in the cellar suffering from wounds of the head and body, from which injuries he died within eighteen or twenty hours, after a great deal of suffering. No one saw the deceased go into the aisle between the end of the counter and the office steps. No one witnessed the sad accident.

A number of witnesses introduced by the plaintiff in the court below, clerks, ex-clerks, and patrons of the store, testified that the aisle in front of the shelves where the jardinieres were kept was used by customers for inspecting goods, and that goods were kept there for the inspection of customers just as they were kept upon the counters, and that customers frequented this aisle in front of the elevator door just as they did other aisles of the store. The testimony of the defendant was to the effect that this space in front of the elevator was only used by clerks and employees in moving merchandise, and was not used or intended to be used by customers. This question was one of the sharply controverted questions in the case, and was a question of fact for the jury to decide, viz. whether or not the aisle in front of the elevator door and in front of the shelves upon which the jardinieres were displayed was used by patrons of the store, and whether or not patrons were impliedly invited to use

this part of the store. The question was submitted to the jury as to whether or not the deceased had a right to go into this space for the purpose of inspecting jardinieres under the implied invitation of the storekeeper to customers, and this question was settled by the jury in favor of the appellee. The appellee proved by a number of witnesses that before the injury the elevator door was frequently left open when the elevator was moved from it. This testimony was objected to. It was also proved, over the objection of the appellant, that clerks and customers of the store, at various and sundry times before the injury, had come near falling into the elevator shaft when the door was left open. The testimony for the plaintiff was also to the effect that it was darker in front of the elevator door than in any other part of the store, and therefore more difficult to see. The jury were taken to the scene of the accident and made a thorough examination of the same.

This case has been most ably and exhaustively argued by counsel on both sides, and has had the most careful consideration of the court. Mrs. Markline testified, over the objection of the appellant that her home had not been paid for. The appellant also wished to show that Mr. Markline left some life insurance, but was not permitted to do so by the court. Under the case of *Railroad Co.* v. *McLellan,* 80 Miss. 700, 32 South. 283, this testimony of Mrs. Markline was inadmissible. But it was harmless error. The jury could not in any wise have been misled by this testimony. The court was correct in excluding the testimony as to the amount of life insurance left by deceased.

The next error argued by appellant is the admissibility of the testimony that the elevator door was frequently left open, and that other people had come near falling into the open shaft. It is the contention of the appellant that this testimony was inadmissible for the

reason that, in a suit based upon the negligence of one, other acts of negligence are not to be received in evidence for the purpose of showing negligence in the particular case; that the admission of this evidence brings collateral issues into the case and tends to distract the minds of the jury from the main issue. The appellant contends that there is a conflict in the decisions relating to the admissibility of testimony of this character when it relates directly to an instrumentality, but that the rule is well established that such evidence should be excluded when it relates to prior negligence of a personal nature. The object of the introduction of this testimony was to show the dangerous character of the aisle in front of the elevator. The testimony not only showed the personal negligence of various employees, as is the contention of the appellant, but tended to show that the place was dangerous on account of the way the elevator was operated. The testimony relating to the leaving up of the door and of other people having near accidents by falling into the same tended to show the dangerous nature and character of the situation under practically similar circumstances as those under which the deceased met his death. There is conflict in the authorities as to whether or not this testimony is admissible. Those authorities which hold that it is inadmissible are based upon the old case of *Collins* v. *Inhabitants of Dorchester,* 6 Cush. (Mass.) 396. In that case it was held that the testimony of a witness that he received a similar injury at or near the place where plaintiff was injured, without any negligence on his part, was not competent for the purpose of proving a defective road. The court said:

"It was testimony concerning collateral facts, which furnished no legal presumption as to the principal facts in dispute, and which the defendants were not bound to be prepared to meet."

Quite a number of states have followed this rule. One of the leading cases holding testimony of this character admissible is that of *Darling* v. *Westmoreland*, 52 N. H. 401, 13 Am. Rep. 55. In that case a number of the previous decisions of different courts, among them the Dorchester Case, are considered, and the rule announced in the Dorchester Case is repudiated. In the cases that allow testimony of collateral facts or issues to be introduced this testimony is allowed for two purposes: One is to show that the defect or manner of operation has continued for such a length of time that the master has knowledge or is charged with notice of the defect or negligent manner of operation. The other ground of admissibility is to show the dangerous character or nature of the place.

In the case under consideration the testimony showed that the door was frequently left open, covering a period of time of practically two years. This testimony showed a negligent habit of operation of the elevator by the employees. The length of time was sufficient to charge the master with notice of the manner in which the elevator was operated. Being chargeable, therefore, with notice of the manner in which the elevator was operated, this manner of operation, without the elevator being guarded by gates or anything of that character, made it a question of fact for the jury as to whether or not the master was not negligent in properly guarding the same. The testimony of other near accidents at the same place, under practically similar conditions, was admissible to show the dangerous character or nature of the place. The operation of the elevator cannot be classed as an isolated negligent act of an employee under this testimony, but rather as the continuous act of the master, the elevator being operated practically in the same manner for a long period of time. There were no collateral issues introduced into the case which tended to cloud the main issue raised by the pleadings. The testimony tended solely and merely

to show that the master knew how his elevator was being operated, and that the manner of that operation made it dangerous to customers who came into the store because of being insufficiently guarded. The appellant, in his able brief, cites section 163 of the Pocket Edition of Jones on Evidence to sustain his contention that this testimony was inadmissible. In Jones' Blue Book of Evidence, section 163, there is a long and valuable discussion of this question. In this section the author states that the authorities are conflicting. We quote from this section:

"So far as the occurrence of other accidents at the same place in concerned, as matter of notice to the municipality responsible, there need be no hesitancy about accepting the rule of its admissibility. The objection to it as tending to introduce collateral issues, and thus lead away the jury's attention, is absolutely illogical and is surely foundationless. . . . There is no necessity to quote from other authorities that in this class of cases the character of the place of the accident is one of the subjects of inquiry pertinent both as to notice and as to the condition of the *locus in quo,* and, if the defendant comes into court saying he is unprepared, the fault lies with himself. He of all others should know the character of the place, it is his charge and duty to know it, and the proposition that testimony with regard to it is part of the *res gestae* is nearer the law than that the evidence is collateral. The weight of authority is well in favor of the admission of such testimony to support the allegation of knowledge on the part of the defendant. There is a class of decisions in which it is held that, in suits for injuries caused by defective streets, it is relevant for the plaintiff to prove other similar accidents for the purpose of showing the dangerous character of the street. And from what we have said with regard to the relevancy of such testimony in proof of *scienter,* it will be gathered that we apply

the same reasoning to its relevancy in showing the dangerous character of the street.''

Again, in another part of the section, this author says:

''When the rule for the exclusion of collateral evidence is carefully examined, and 'it is recognized that those facts only which are not capable of affording any reasonable presumption or inference as to the principal fact or matter in dispute should not be admitted in order to keep the minds of the jurors free to consider the issues, it must be conceded that, so far from misleading the jury, the evidence of similar accidents at the same place rather focuses their attention on what is sought to be established, namely, the dangerous nature of that particular portion of the road. To that extent it bears directly upon the issue, and is therefore relevant.''

To the same effect is Wigmore on Evidence, vol. 1, section 458. See, also, *Alcott* v. *Public Corporation of N. J.* 78 N. J. Law, 482, 74 Atl. 499, 32 L. R. A. (N. S.) 1084, 138 Am. St. Rep. 619, and the note thereto. This question is ably discussed in the case of the *District of Columbia* v. *Armes,* 107 U. S. 519, 2 Sup. Ct. 840, 27 L. Ed. 618. In that case testimony to prove prior accidents because of the defective sidewalk was held admissible upon two grounds, viz., as tending to show the dangerous character of the place, and also that the city had notice of the same. From that opinion we now quote:

''The admission of this testimony is now urged as error, the point of the objection being that it tended to introduce collateral issues, and thus mislead the jury from the matter directly in controversy. Were such the case, the objection would be tenable; but no dispute was made as to these accidents, no question was raised as to the extent of the injuries received, no point was made upon them, no recovery was sought by reason of them, nor any increase of damages. They

were proved simply as circumstances which, with other evidence, tended to show the dangerous character of the sidewalk in its unguarded condition. The frequency of accidents at a particular place would seem to be good evidence of its dangerous character; at least, it is some evidence to that effect. Persons are not wont to seek such places, and do not willingly fall into them. Here the character of the place was one of the subjects of inquiry to which attention was called by the nature of the action and the pleadings, and the defendant should have been prepared to show its real character in the face of any proof bearing on that subject. Besides this, as publicity was necessarily given to the accidents, they also tended to show that the dangerous character of the locality was brought to the attention of the city authorites.''

In the case of *Railroad Co.* v. *Insurance Co.*, 82 Miss. 770, 35 So. 304, the court, in passing upon the admissibility of testimony showing emission of sparks by other engines before and after the fire, has the below quotation from the case of *Railroad Co.* v. *Richardson*, 91 U. S. 470, 23 L. Ed. 356:

''The question has often been considered by the courts in this country and in England, and such evidence has, we think, been generally held admissible, as tending to prove the possibility and a consequent probability, that some locomotive caused the fire, and as tending to show a negligent habit of the officers and agents of the railroad company.''

Similar testimony was admitted in the case of *Hayward* v. *Merrill*, 94 Ill. 349, 34 Am. Rep. 229. The testimony under consideration in this case tended to show a negligent habit of the agents of the appellant company. From a consideration of the authorities above cited and other authorities quoted in the briefs of counsel on both sides, we are satisfied that the testimony showing that the elevator door was frequently left wholly or partially open by employees of the company during a

period covering two years was admissible to show the negligent habit of these employees, and that the master knew or ought to have known of the manner in which the elevator was being operated, and therefore to show that this manner of operation of the elevator made the surroundings about the elevator door dangerous. The testimony of other near accidents at this same place, under practically the same conditions as existed at the time the deceased was injured, tends to show the dangerous nature of the place.

It is earnestly and ably argued by counsel for appellant that the defendant should have been given a peremptory instruction, because, as stated in one of the briefs of counsel for appellant:

"The evidence affirmatively shows that the defendant had exercised ordinary care to prevent any person in the store, who were themselves in the exercise of reasonable care, from falling into the elevator shaft. That Markline was, at the instant the accident occurred, at a place in the store where he was not impliedly invited to go, is too plain for argument. That his business in the store did not require him to go behind the counter lines, and to personally take the wares from the shelving behind the counters, cannot be controverted; and, since he must have gone behind the counter lines in order to have reached the elevator door, it necessarily follows that at the instant he was injured he was at a place where he was not invited to be and if he had not been there he could not have been injured, and that his injury was therefore one for which the defendant cannot be held liable."

The reasons why a peremptory instruction should have been given appellant are thus stated by other counsel for appellant in a most able brief, as follows:

"Conceding, for the purposes of this argument, that appellant was guilty of negligence in respect to the unguarded, open elevator shaft, and that persons desiring to purchase goods from the appellant were by im-

plication invited into the space between the end of
the counter and the elevator, the burden of proof rested
upon the plaintiff in this case to establish, by a pre-
ponderance of the evidence, that the decedent went
into said space for the purpose of examining a jardi-
niere, in anticipation of purchasing the same, and
while stooping down to examine such jardiniere he fell
into the unguarded elevator shaft. Facts essential to
the liability of the appellant in this case could be shown
by circumstances. But such circumstances must have
some established fact as a foundation, and mere con-
jecture is unsufficient to support a verdict. One pre-
sumption or inference cannot be drawn from or rest
upon another presumption or inference.''

There was testimony introduced for the plaintiff
showing that customers frequently went into the space
in question to examine goods upon the shelves; that
sometimes they were invited into this space by the
clerks, and at other times went in there without an
express invitation, and were waited upon in this space
by the clerks. The shelves upon which the jardinieres
were, were not directly behind the counter, neither
were they directly behind the obstruction made over a
part of the aisle by the protruding steps. There was
no sign of any kind to warn customers that they were
not expected to go into this space. There was no gate
from the end of the counter to the end of the steps
to check or stop them from going within this space.
The question as to whether or not Mr. Markline was
impliedly invited to go within this space to examine
the jardinieres was submitted to the jury on proper
instructions, and the jury decided that he had an im-
plied invitation to go within this space to examine jardi-
nieres. If the testmony, either direct or circumstantial,
was sufficient to establish the fact that he went within
this space for the purpose of examining jardinieres,
then we will not disturb the verdict of the jury.

This brings us to the question whether or not the testimony was sufficient to sustain the verdict of the jury. The uncontradicted testimony shows that the sole and only purpose of Mr. Markline in going into the store was to purchase jardinieres. He was in the act of inspecting jardinieres when the clerk left to get a ruler to measure one of these. The jardiniere he was inspecting was placed upon a shelf at the end of this aisle right by the elevator door. On this shelf were other jardinieres not exactly like the one he had inspected, but something on the same order. He, of course, saw where the clerk put the jardiniere. There is no testimony, either direct or circumstantial, that he, in going into the space in front of the elevator, abandoned his idea of inspecting jardinieres. In the absence of any testimony to the contrary, the presumption is that he was continuing his examination with the view of purchasing jardinieres. In order to inspect them, he simply had to walk west about ten feet to the corner of the table, thence turn south into the aisle, and proceed down it a few feet to these shelves. It is true there is no direct testimony that this was his purpose when he went into this space, but, in the absence of any direct or circumstantial testimony showing an abandonment or even a deviation from his purpose of inspecting jardinieres, the jury had the right to infer that such was his purpose. It is also to be borne in mind that, in the absence of any testimony to the contrary, the presumption is that the deceased exercised due care and caution for his safety. In fact, contributory negligence in this state is an affirmative defense, and must be pleaded and proved by the defendant, unless the testimony introduced for the plaintiff affirmatively establishes contributory negligence of the plaintiff or the deceased. Contributory negligence now only goes in mitigation of damages under our concurrent negligence statute. This question is ably discussed in Jones' Blue Book of Evidence, vol. 2, section 185. In this section the author, on page 74, says:

"The law should be clear that the plaintiff is not called upon to prove what is the defendant's affirmative defense. Among other circumstances which may be considered in this connection are the natural instinct of self-preservation and the general disposition of men to avoid danger. This subject has often arisen in cases relating to the death of a person where it is claimed that he has been killed by the negligence of another; and in such cases, where there is no evidence as to how the accident occurred it has frequently been declared that the deceased should be presumed to have exercised due care, and the court will not assume that the deceased came to his death through his own contributory negligence."

As the above quotation aptly says, among other things are to be considered the natural instinct of self-preservation and the general disposition of the men to avoid danger. These presumptions are to be considered here not only with reference to the question of contributory negligence on the part of the deceased, but also in considering the reason why he went into the space. It is one of the contentions of the appellant on this point that from the testimony it was equally probable that the deceased temporarily abandoned the object of his visit to the store and idly wandered into the space, and through curiosity looked into the elevator shaft and for some unknown cause fell. In the absence of any direct testimony, however, the jury, in applying the above presumptions, viz., the continuation of his shown purpose to buy jardinieres, of the instinct of self-preservation, and the disposition of men to avoid danger, were justified in finding as a fact that he went in there for the purpose of inspecting the jardinieres. The verdict is not based upon presumptions, as it is insisted by learned counsel for appellant, but is based upon proof of facts to which these presumptions are merely applied. Under the testimony for the plaintiff

it was negligence for the appellant not to have guarded the elevator shaft. It was negligence in leaving the elevator shaft partially open. This negligence of the appellant was the cause of the death of the deceased. without this negligence of the appellant, the deceased would not have sustained these fatal injuries. In the case of *Adams* v. *Bunker Hill, etc., Mining Co.,* 12 Idaho, 637, 89 Pac. 624, 11 L. R. A. (N. S.) 644, a somewhat similar case in principle, and where the testimony was circumstantial, the court in discussing this question said:

"It must be readily admitted that, where the evidence in a case of this kind is so uncertain as to leave it equally clear and probable that the injury resulted from any one of 'half a dozen causes,' then a verdict for plaintiff would be pure speculation, and could not be sustained; but it may be true that the evidence would leave it possible that the injury resulted from any one of several causes, and yet it would at once point to the greater probability that it resulted from the one certain, specific cause charged by the plaintiff. In the latter case the jury would be justified in returning a verdict in favor of the plaintiff, although it be possible that the injury may have resulted from some other cause. There are very few things in human affairs, and especially in litigation involving damages that can be established to such an absolute certainty as to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage rather than the one alleged by the plaintiff. But such possibility, or even probability, is not to be allowed to defeat the right of recovery, where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause."

In the same case is found the following quotation from the syllabus in the case of *Railroad Co.* v. *Stout,* 17 Wall. 657, 21 L. Ed. 745:

"If, upon any construction which the jury is authorized to put upon the evidence, or by any inference they are authorized to draw from it, the conclusion of negligence can be justified; the defendant is not entitled to a nonsuit, but the question of negligence must be left to the jury."

There is a very instructive and extended note to the Adams Case. We think there was sufficient testimony to satisfy a jury by a preponderance of the evidence that the proximate cause of the death of Mr. Markline was the negligence of the appellant. It is the duty of the proprietor of a store to which the public are impliedly or expressly invited to use reasonable care and diligence to keep the premises therein reasonably safe for persons visiting the store upon this invitation, express or implied. That the deceased was an invitee is uncontradicted. This question is well considered in the case of *Christopher* v. *Russell,* 63 Fla. 191, 58 So. 45, Ann. Cas. 1913C, 564. See, also, notes to this case. We find in this note the following:

"Where there is an invitation to go to a warehouse for goods, the invitation to enter the premises must be held broad enough to include all the place occupied by the goods, together with necessary passways in and out of the warehouse." *Pauckner* v. *Wakem,* 231 Ill. 276, 83 N. E. 202, 14 L. R. A. (N. S.) 1118.

In the note to the above case will be found many cases of circumstantial evidence directly in point. The following quotation is also found in this note in the case of *Allen* v. *Willard,* 57 Pa. 374:

"The natural instinct which leads men in their sober senses to avoid injury and preserve life is an element of evidence. In all questions touching the conduct of men, motives, feeling, and natural instincts are allowed to

have their weight, and to constitute evidence for the consideration of courts and juries.''

From an examination of the above note and the cases therein cited, it will be found that, even in a number of those states where the plaintiff is required affirmatively to prove the absence of contributory negligence, yet in cases of circumstantial testimony the presumption is applied that the deceased used ordinary care and caution. *Adams* v. *Iron Cliffs Co.,* 78 Mich. 271, 44 N. W. 270, 18 Am. St. Rep. 441.

Appellant cites *Railroad Co.* v. *Cathey,* 70 Miss. 332, 12 So. .253. In the Cathey Case it was shown that there was a defective rail and other defects in the track, these defects being due to the negligence of the master. In that case, however, it was not shown that the cause of his death was due to any of these defects. There were several different theories equally probable that could have caused his death, some of which the master was responsible for and others not. This being true, the court in that case held that the testimony failed to show that the death was due to the negligence of the master. In the case under consideration, however, the testimony shows that it was negligence for the elevator to have been left open and unguarded. The testimony also shows that Mr. Markline fell into this open and unguarded elevator shaft. The accident could not have happened except for the negligence of the appellant. The circumstantial testimony was sufficient to satisfy the minds of the jury that the proximate cause of the death of the deceased was this negligence of appellant. It is possible, of course, that deceased might have abandoned temporarily his purpose of inspecting jardinieres, and through idle curiosity have gone over to the elevator, and that this caused his injury; but under the testimony we do not think this theory a probable one.

In fact, we think the testimony amply sufficient to have satisfied the minds of the jury, by a preponderance thereof, that Mr. Markline fell into the elevator while

inspecting or going into the space to inspect jardinieres. The case of *Railroad Co. v. Slaughter,* 92 Miss. 289, 45 So. 873, is relied upon by the appellant. In the Slaughter Case the testimony showed that the boy was on the roof of the tank several hours; that a part of this time he was engaged in running around on top of the roof amusing himself by throwing stones at different parties, and that he also had duties for the master to perform on the roof in adjusting the lever and float. Some of the time he was engaged in his master's business; the other, he had abandoned the business of the master and was amusing himself. The court on these facts stated the question to be whether or not, at the time he fell, he was engaged about his master's business. In the case at bar the testimony shows that Mr. Markline went to the store for the sole purpose of purchasing jardinieres. It does not show that he, at any time, abandoned this idea. In fact, the physical facts, the situation of the jardinieres on the shelf with reference to the elevator opening, show that at the time of his accident he was either inspecting, going to, or returning from an inspection of these jardinieres. In the Slaughter Case there was an abandonment of the master's business shown by the testimony. In this case was no such abandonment shown. In the Slaughter Case it was shown that "there was testimony for the defendant that the point of the roof through which he fell was some five feet from the path he ought to have pursued in going to the lever, if he went to the lever." The opinion also states:

"If the evidence shall show, on a new trial, that he fell through this roof whilst engaged in and about his master's business, a recovery ought not to be disturbed because he fell through one part or the other of the roof, there being but the small radius of seven and one-half feet around which he could move. Substantial rights are not to be pared away by such infinitesimal calculations."

An invitee in a store is not to be too circumscribed as to his movements while waiting for a clerk to exhibit goods. He has a right to inspect goods and frequent places used by other patrons of the store and provided for their use by the storekeeper. There are several other Mississippi cases cited by counsel for appellant, but our views do not conflict with any of them, and we shall not enter into any discussion of them. We think the court was correct in declining the peremptory instruction asked by the defendant. We think the facts were sufficient to submit the case to the jury.

It is next contended by the appellant that the court erred in giving certain instructions to the plaintiff and in refusing instructions asked by the defendant. After a careful examination of all of the given and refused instructions, we are satisfied that the defendant cannot complain in this behalf. We think the instructions given the defendant were most liberal. These instructions in effect told the jury that, unless they believe from a preponderance of the testimony that at the time of the injury the deceased·was pursuing his intention of purchasing goods and was inspecting the goods, they should return a verdict for the defendant. They were instructed that they must believe from the testimony that the negligence of the defendant was the proximate cause of the injury. They were instructed that if they believed that the injury was caused solely by the negligence of the deceased there could be no recovery; that if they believed that the deceased went into the space without being invited in there, for the purpose of looking into the elevator, they should find for the defendant. They were also instructed that, unless a reasonable man would have anticipated deceased would go into this space under the circumstances, they should find for the defendant. They were instructed that the burden of proof was upon the plaintiff to prove to the satisfaction of the jury, by a pre-

ponderance of the testimony, that the deceased's injury was proximately caused by the failure on the part of the defendant to exercise reasonable care to prevent a customer such as deceased was from falling into the shaft. They were instructed that if they believed that the elevator was a freight elevator, and was located at a place where customers were not invited or expected to go and were not accustomed to go, and that deceased went into this place for purposes of his own, without being invited or induced to go in by the defendant, or wandered or went into the place and fell into the elevator shaft when, by the exercise of ordinary care and caution, he could have seen and known the dangers of it, then the defendant is not liable. They were also instructed that if they believed that the accident was due in part to the negligence of the defendant and also in part to the negligence of the deceased, then that the damages should be reduced in proportion to the negligence of the deceased. The jury was also instructed, for the defendant, "that if from all the testimony you are unable to find with certainty whether Markline was injured solely by his own negligence or by any negligence of the defendant proximately contributing to his injury, then the plaintiff has failed to establish a case." This instruction certainly was most liberal to the defendant, and we do not mean by quoting a part of it to say that we approve the giving of this instruction in cases of this character, but merely quote it to show that the defendant certainly cannot complain about the instructions in the case.

It is next insisted that the verdict of the jury is excessive. We think it is exceedingly large. The testimony in the case shows that Mr. Markline was a healthy man; that he earned $1,800 a year; that his life expectancy was twenty-four and one-half years; that he lived eighteen or twenty hours, and suffered severely. From the record we are unable to say whether or not the jury diminished the damages or that the

deceased was guilty of contributory negligence. From the time that the clerk left Mr. Markline standing at the counter until he was found in the cellar, only about five minutes elapsed. At that time the elevator door was partially open, but the elevator was on a level with the main floor. Whether the elevator was moved before the deceased went into the aisle to inspect the jardinieres, or whether it was moved while he was in there, no one can say from the record. As long as the elevator was standing on the main floor there was no danger. It is just as probable that the elevator was not moved until Markline had gone into the place and was inspecting the jardinieres as it is to assume that it was moved before he went in there. We are unable, therefore, to say from the record that the deceased was guilty of any contributory negligence, and that this verdict should in any way be disturbed by us. We cannot say that it is the result of any passion or prejudice. It is impossible for this court to measure in dollars and cents the pain and suffering endured by the deceased for the eighteen or twenty hours that he lived. Entertaining these views, the case is therefore affirmed.

*Affirmed.*