**Allen FRAZIER, a minor by Ferrol Frazier, next friend, Plaintiff-Appellant,**

v.

**CONTINENTAL OIL COMPANY, et al., Defendants-Appellees.**

**No. 75–4326.**

United States Court of Appeals, Fifth Circuit.

Feb. 24, 1978.

W. Joel Blass, Gulfport, Miss., Roland B. Skinner, Biloxi, Miss., for plaintiff-appellant.

Stanford E. Morse, Jr., Gulfport, Miss., for defendants-appellees.

Appeal from the United States District Court for the Southern District of Mississippi.

Before BROWN, Chief Judge, GEWIN and TJOFLAT, Circuit Judges.

GEWIN, Circuit Judge:

This appeal arises from a suit seeking damages for alleged personal injuries filed by appellant in a Mississippi state court. The case was removed to federal district court pursuant to a petition by appellee. At the close of the appellant's case the appellee moved for a directed verdict. The court granted the motion and this appeal followed. We reverse.

On the morning of February 28, 1972, the appellant, Allen Frazier, along with five other children, was injured in a flash fire at a Continental Oil Company (Conoco) gasoline station[1] located across the street from the school where the appellant was a student.[2] Before classes began the appellant accompanied another student, Mark Buckley, to the station. Buckley went inside the building to purchase some candy, and the appellant walked around to the back of the station to use the restroom. While the boys were at the station a gasoline truck was filling underground storage tanks on the premises.[3] Each tank was vented by a pipe which opened above and between the entrances to the men's and women's restrooms. As the appellant passed beneath these pipes an explosion occurred, and he sustained burns on his face and arms.

In *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969), this court, sitting en banc, established the test for determining whether on a motion for directed verdict in a federal trial the evidence is sufficient to submit the case to the jury. There we stated:

> On motions for directed verdict and judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences

1. The station was owned by Clyde Evans. Evans leased the station to The Continental Oil Company. Continental, in what its representative termed a "lease lease-back" arrangement, gave Evans a Continental franchise.

2. The station was apparently a popular gathering place for students from the school. Appellant testified that at the time of his injury there were 50 or more students on the premises.

3. The gasoline truck was owned by Carl Wallace who was the "commission agent" for appellee. Wallace delivered gasoline from appellee's storage tanks located on his property to Evans. Evans paid Wallace who remitted the money to appellee.

most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Id.* at 374.

In the instant case the trial judge granted the appellee's motion for a directed verdict on the grounds that there was not sufficient substantial evidence of tortious conduct or of control of the gasoline tank on the part of the appellee for this case to be submitted to the jury. Our examination of the record convinces us that the trial judge committed error.

█ Under Mississippi law negligence may be proved entirely by circumstantial evidence.[4] There was testimony by the appellant's expert witness, Mr. Brown, that the vent pipes running from the tanks were equipped with "T" vents which would cause the fumes to be discharged downward in violation of industry standards set forth in the National Fire Protection Association Code[5] (NFPA). Brown also testified that one pipe was 10 feet and the other 10 feet 6 inches above the adjacent ground level, in violation of the industry standard of 12 feet. He further testified that the Code required upward discharge of gasoline vapor, which is gasoline in its most combustible form, in order to "disperse the gasoline vapor into an atmospheric condition and away from a point where people might congregate or be," and to prevent the vapors from collecting under an eave or some part of a building. When asked to give his opinion of the cause of the fire at the Conoco station, assuming that someone had lighted a match near the restrooms, Brown stated:

If a gasoline transport vehicle were unloading gasoline into the fill pipe then the movement of vapor, saturated vapor, out of the gasoline tank to the vent would be at its greatest, and dependent upon the rate of fill of the tank, or the greater the rate of fill the greater the discharge, this vapor would be discharged in a downward direction and because of the low proximity of the "T" vent I would say it would be very probable that a fire or an explosion could occur.

Record p. 97.

There was no objection to this testimony but the trial judge voluntarily excluded it.[6] In his ruling on the motion for directed verdict the court assigned the following reason:

You take the testimony of Mr. Brown here, he's talking about what some Code says, it's pure hearsay in this case, there was no objection interposed to it, but I look at it from the standpoint of his competence, and the Fifth Circuit very squarely answered the incompetence of his entire testimony in *Mississippi Power & Light v. White Carver* (sic) reported by the Fifth Circuit in 68 Federal 2nd 929 [928].

Record p. 156.

In *Mississippi Power & Light v. Whitescarver*, defendant electric company attempted to introduce into evidence the Na-

---

4. *Capital Transport Co. v. Segrest,* 254 Miss. 168, 181 So.2d 111, 119 (1965).

5. National Fire Protection Association Standard no. 30 section 2230.

6. A copy of section 2230 of the code and a letter from the librarian of the NFPA certifying it as a true and accurate copy was received into evidence by the trial judge. The following is from the record:

BY MR. BLASS:
    Court please, we would offer this document, the letter and the attached document in evidence.
BY THE COURT:
    May be entered and marked.
    (Above referred to letter with copy of code attached received in evidence and marked as Exhibit P–14.)
Record p. 94.

tional Safety Electric Code for the purpose of showing that the height of the power lines in question exceeded minimum requirements. In upholding the trial court's exclusion of this Code, this court noted that the Code lacked the Government's official stamp, that defendant's expert witness did not refer to it in support of his opinion, nor testify that electrical experts accepted it as a standard work in the field. The court also found that the Code had no compulsive force, merely represented the authors' opinions, afforded no opportunity for cross-examination, and that the preface of the Code itself indicated that it dealt with a controversial and constantly evolving science.

We later considered the issue in a different context in *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5 Cir. 1975). In that case this court aligned itself with other courts in liberalizing the admissability of safety codes and standards. In *Muncie* we upheld the admission of Federal Aviation Administration (F.A.A.) circulars on recommended landing procedures for pilots approaching uncontrolled airports, stating that:

> In holding admissible advisory materials promulgated by a governmental agency, this Court's decision is in accord with the modern trend of cases finding national safety codes representative of "a consensus of opinion carrying the approval of a significant segment of an industry" and offerable as exemplifying safety practices prevailing in the industry. Courts have become increasingly appreciative of the value of national safety codes and other guidelines issued by governmental and voluntary associations to assist the trier of fact in applying the standard of due care in negligence cases. Though the law is by no means settled, this Court finds that the inherent trustworthiness of such

codes and recommendations, coupled with the need for their introduction in order to impart relevant information not contained elsewhere, is sufficient to justify their admission, notwithstanding the traditional dangers of hearsay evidence.

*Id.* at 1183.

In light of this decision we believe that the trial judge's unarticulated reliance upon *Mississippi Power & Light* is misplaced. The rationale in *Muncie* for the admission of the F.A.A. circulars is clearly and comprehensively explicated in this court's opinion. In applying *Muncie* to the instant case we therefore need only delineate the basic configurations of that opinion.

■ The primary reason for excluding hearsay evidence is the lack of opportunity to test the truth of such evidence through cross-examination.[7] However, we have held that the dangers inherent in hearsay testimony can be obviated by a requirement that such statements be trustworthy and necessary.[8]

■ The requirement of trustworthiness of the information contained in safety codes such as that published by the NFPA is satisfied by the fact that such organizations are formed for the chief purpose of promoting safety,[9] and the materials they publish generally represent not merely the opinion of one expert in a particular field but "a consensus of opinion carrying the approval of a significant segment of an industry."[10] As for the necessity requirement, the expense and difficulty involved in assembling at trial the individuals who have compiled the pertinent recommendations in order to have them available for cross-examination makes it, for all practical purposes, necessary to resort to the publication to obtain the desired information.[11]

---

7. *See* C. McCormick, Evidence § 245 at 583 (2d ed. 1972).

8. *Muncie Aviation Corp. v. Party Doll Fleet Inc.*, 519 F.2d at 1182.

9. *Id.*

10. Comment, Admissability of Safety Codes, Rules and Standards in Negligence Cases, 37 Tenn.L.Rev. 581, 587 (1970).

11. *Id. See* 519 F.2d at 1182. We also note that this court has held that "[e]vidence of custom within a particular industry, group, or organization is admissible as bearing on the standard of care in determining negligence." 519 F.2d at

As this court emphasized in *Muncie Aviation supra*, this rule of admissability does not deprive the trial judge of all discretion in determining whether such publications shall be admitted into evidence.[12] The materials must be relevant, trustworthy, and of practical necessity. The judge, for example, could exclude outmoded or superceded standards, or standards which were published after the incident in question occurred. 519 F.2d at 1183–84. However, this discretion is circumscribed to the extent that blind reliance on case law to exclude safety codes merely because they have been excluded in the past will no longer suffice in every case.

Mr. Brown's testimony itself is admissable under the Federal Rules of Evidence. Those rules contemplate the admission of opinion testimony by experts based upon materials not necessarily admissable in evidence. Rule 702 (Testimony by Experts) states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, training, or education, may testify thereto in the form of an opinion or otherwise.

Rule 703 (Bases of Opinion Testimony by Experts) provides:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. *If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissable in evidence.* (Emphasis added).

In the case before us Brown testified that he was responsible for designing and han-

dling the construction of approximately 300 service stations, that he had engaged in the research of gasoline vapors and the storage of gasoline products, and that his duties in designing service stations involved problems of venting underground tanks. He is a member of the Mississippi Engineering Society, the National Society of Professional Engineers, and a fellow in the American Society of Civil Engineers.

Brown testified that the industry standards governing service station facilities were found in NFPA Pamphlet 30, and that the Conoco station violated the standards set forth in that publication for venting gasoline storage tanks. When asked to give his opinion of the cause of the February 28, 1972 explosion at the Conoco station, Brown provided the court with a lengthy explanation, including a diagram of the gasoline tank and venting system, and the function of a gasoline venting system. He testified that an improperly designed system might create conditions which would increase the probability of the occurrence of an explosion.

The record discloses that Brown was well qualified in his field and fully capable of forming an independent opinion concerning the cause of the explosion. The fact that he buttressed that opinion by referring to the NFPA publication to establish the standard of care in the industry does not under the Federal Rules of Evidence render his testimony inadmissable.

In ruling that there was insufficient evidence to present the question of appellee's liability to the jury the trial judge ignored evidence that appellee had knowledge that a fire had occurred around the vents over the restrooms at Evans' Conoco Station approximately a year prior to the accident in which the appellant was in-

---

1180. Thus, the NFPA standards might also be admissable as evidence of the petroleum industry's standard of care in regard to the venting of gasoline storage tanks. *See also* W. Prosser, Law of Torts, § 33 at 166–67 (4th ed. 1971).

12. In *McDonald v. United States*, 284 F.Supp. 978 (N.D.Texas 1968), the court disregarded evidence from the NFPA Code because of "the unsettled state of the authorities on the admissability of such codes and the effect to be given them in this character of case." *Id.* at 983.

jured.[13] A Mr. Dimitry, who had a business behind the Conoco station, testified that he observed "a small explosion and a fire" in the vents above the restroom that occurred while gasoline was being loaded.[14] Mr. Dragna testified that Mr. Wallace had reported to him that a girl in the restroom struck a match, that a flash occurred, and her hair was singed. When asked if any change had been made in the premises subsequent to this fire Mr. Dragna replied that no change had been made other than the addition of a No Smoking sign at the instruction of the fire marshal. Mr. Evans testified that there was one small No Smoking sign near the restroom area but that he did not know whether it was in place at the time the appellant was injured.

The Mississippi Supreme Court has recognized that gasoline is a "dangerous agency" requiring the "highest degree of care and precaution suggested by experience and the known danger of its use." *Crane v. Adams*, 226 Miss. 436, 84 So.2d 530 (1956). In *Gulf Refining Co. v. Williams*, 183 Miss. 723, 185 So. 234 at 236 (1938) the court defined the degree of care the distribution of a commodity such as gasoline requires and concluded:

> The vendor of an inherently dangerous commodity, such as gasoline, is under duty to use cautious care to distribute the same in reasonably safe containers, the degree of care thereinabout to be commensurate with the danger, and the obligation of this duty is not dependent upon contractual relations, but extends to all who may lawfully use, or be in the vicinity of, the container.

In *Gulf Refining Co.* the plaintiff was injured when a fire occurred while he was removing the bung-hole cap from a drum of gasoline delivered by the defendant. The court rejected the defendant's argument that this accident was so extraordinary that it could not have been foreseen by the defendant. The proof had shown that the bung cap was in a badly worn condition and that at least one of the defendant's employees was aware of this condition. Accordingly the court held that the defendant should have been aware of the condition of the cap and should have foreseen that this condition could have caused a fire.

In the instant case appellee Conoco was aware of the dangers presented by the system at Evans' Conoco Station. Its district representative, Mr. Dragna, had been notified that a flash fire had occurred in the same area where the appellant was later burned. This prior accident should have at least suggested to the appellee that the venting system at the station might be faulty.[15] Yet no steps were taken, other than putting up a No Smoking sign, to prevent future explosions.

Thus, even absent Brown's testimony, there was substantial evidence that the venting system constituted a significant hazard, particularly while gasoline was being unloaded, that appellee knew of this hazard and yet did nothing to remedy it, and that the flash fire which injured the appellant was similar to the one which had occurred a year earlier. We believe that this evidence is substantial enough to create a jury question concerning the cause of the explosion which injured the appellant and the appellee's liability for those injuries under theories of either strict liability or negligence.

■ We find that the trial judge also erred in determining that there was no substantial evidence of appellee's control of the service station equipment. Mr. Dragna testified that appellee owned all the equipment involved in the actual handling of the gasoline—the containers, pumps, and

---

13. The trial judge stated that he didn't "know of anything else other than his [Brown's] testimony which would give rise to any liability to the defendant . . . ."
   Record p. 156.

14. Mr. Dimitry testified that he could see flames blowing out approximately a foot from the vents. He put them out with a fire extinguisher.

15. The testimony of even near-accidents at the same place and under similar conditions goes to show the dangerous character of the place. *See S. H. Kress & Co. v. Markline*, 117 Miss. 37, at 46, 77 So. 858, at 862 (1918).

lines—although there is some conflict concerning the ownership of the venting system. Gasoline owned by appellee and stored in tanks owned by appellee was delivered to Mr. Evans' service station where it was pumped into underground tanks owned by appellee. At trial it was stipulated that the gasoline storage tank vents at Mr. Evans' station were installed according to appellee's recommendations. Finally, Item 6–B of the Dealer Franchise Agreement between appellee and Evans stated that the Dealer shall "[m]ake no alterations in or additions to the Premises or equipment except with Continental's written consent." Thus, even if the dealer wished to make safety improvements on equipment owned by appellee, he was first required to obtain appellee's approval. We believe this evidence to be sufficiently substantial to warrant submission to a jury to determine the question of appellee's control of the gasoline handling equipment.

In its brief the appellee cites the case of *E. I. Dupont DeNemours & Co. v. Ladner*, 221 Miss. 378, 73 So.2d 249 (1954) in support of the proposition that the alleged negligence of Wallace and Evans in unloading the gasoline while children were present was a superceding intervening cause of the accident, thus absolving the defendant of all liability. The *Dupont* case involved the sale by Dupont of a chemical used as a solvent in the processing of soybean meal for cattle feed to a manufacturer of the feed. Dupont wrote the manufacturer warning it of the dangers of using the chemical in the production of cattle feed and urged it to discontinue its use in the manufacture of this product. The manufacturer ignored the warning and continued to use the chemical. Plaintiff's cattle ate the tainted feed and died. The Mississippi Supreme Court held that the manufacturer's deliberate disregard of Dupont's warning constituted an independent, intervening cause of the injury which freed Dupont of liability.

The trial judge in the case before us did not rule on this question in considering the defendant's motion for a directed verdict.

We find the argument to be of insufficient merit to allow appellee to prevail on this appeal. We initially note that appellee's position is different from the defendant's position in the *Dupont* case. Here, the injury arose not in the use of a dangerous product but in its distribution. As discussed above the gasoline storage tanks belonged to appellee and the vents were installed according to its recommendations. Item 2–A of the franchise agreement required appellee to maintain its equipment in good repair while Item 6–B of the agreement forbid any change in this equipment without appellee's consent. There was evidence that the venting system in use at Evans' station created an extremely dangerous condition, that appellee was well aware of this danger, and did nothing to correct it. There was no evidence that appellee took any steps to instruct either Wallace or Evans concerning methods in which the danger inherent in unloading the gasoline might be minimized or avoided.

In the *Dupont* case the court held that Dupont "had a reason to believe that its warning letter would be heeded by the manufacturer." 73 So.2d at 256. Here, appellee had no reason to believe that its gasoline would be pumped into its tanks at Evans' station in a manner different from that employed when the first reported explosion occurred. And unlike Dupont appellee made no effort to insure that the dangers connected with its product would be prevented. There is even evidence that the storage system at the station was so dangerous that the delivery of gasoline constituted a significant hazard under any circumstances. Children may have set the fire which injured the appellant and obviously the greater the number of smokers in the vicinity of the vents, the greater the danger. But the explosion could just as easily have been set off by a single adult with a cigarette. Evans and Wallace could have warned the children away, but they could not have remedied, without appellee's consent, what the evidence indicates was the primary source of danger on the premises— the faulty venting system. That was appel-

lee's responsibility, a responsibility it made no effort to discharge.

REVERSED and REMANDED.