Leeann **HOLDERBAUM, Plaintiff,**

v.

**CARNIVAL CORPORATION, Defendant.**

**Case No. 13–24216–CIV.**

United States District Court, S.D. Florida.

Signed Feb. 19, 2015.

Michael D. Eriksen, Eriksen Law Firm, West Palm Beach, FL, for Plaintiff.

Gregory R. Elder, Jeffrey Eric Foreman, Andrew Douglas Craven, Elisha Sullivan, Foreman Friedman, PA, Samantha S. Loveland, Miami, FL, for Defendant.

*ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (D.E. 65) AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (D.E. 71)*

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment ("Def. Motion," D.E. 65), filed December 1, 2014. Plaintiff filed a Response on December 15, 2014 ("Pla. Response," D.E. 86), to which Defendant filed a Reply on December 22, 2014 ("Def. Reply," D.E. 99). Also before the Court is Plaintiff's Motion for Partial Summary Judgment or, in the Alternative, Motion in Limine, Regarding any Assertion of Comparative Negligence by Defendant, ("Pla. Motion," D.E. 71), filed December 2, 2014. Defendant filed a Response on December 15, 2014 ("Def. Response," D.E. 87), to which Plaintiff filed a Reply on December 22, 2014 ("Pla. Reply," D.E. 96). Upon review of the pleadings and the record, the Court finds as follows.

## I. Background [1]

This negligence action arises from injuries Plaintiff, Leeann Holderbaum, sustained while a fare-paying passenger aboard the cruise ship *M/S Carnival Paradise* (*"Paradise"*), which is owned and operated by Defendant Carnival Corporation. (Pla. Motion ¶¶ 1, 3.) On August 29, 2013, Plaintiff was about to descend the main mid-ship stairway when her shoe caught on the metal "wear strip" on the nose of the top stair, causing her to fall down the stairs and suffer a lower leg and ankle injury. (*Id.* ¶¶ 3–4.) At the time her shoe caught in the metal wear strip, Plaintiff was holding onto the handrail with her left hand. (*Id.* ¶ 3.) The Parties dispute the extent of Plaintiff's injuries. (*See id.* ¶ 4; Def. Response ¶ 4.)

There is a gap between the bottom edge of the metal strip and the carpet that projects a sharp "lip" toward passengers descending the stairway ("the gap"). (Pla. Motion ¶ 7.) The lip "is effectively camouflaged to descending passengers by the carpet when there is no weight on the carpet." (*Id.* ¶ 8.) In other words, one must step on (or otherwise depress) the carpet in front of the metal nose to expose the sharp lip. (*See id.*) Plaintiff did not see the lip before it snagged her shoe. (*Id.* ¶ 9.) No alcohol was involved. (*Id.* ¶ 10.)

Additional facts will be developed where relevant to the Court's analysis.

## II. Legal Standard

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). In addition, under Federal Rule of Civil Procedure 56(f)(1), the Court may grant summary judgment for the nonmoving party "[a]fter giving notice and a reasonable time to respond." Fed. R.Civ.P. 56(f)(1); *see also Gentry v. Harborage Cottages–Stuart, LLLP,* 654 F.3d 1247, 1261 (11th Cir.2011). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of [Rule 56] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation omitted). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

---

**1.** The facts contained in this section are taken from Plaintiff's Material Facts Not in Dispute (*see* Pla. Motion at 1–3), Defendant's Response to Plaintiff's Statement of Undisputed Facts (*see* Def. Response at 2–4), Defendant's Statement of Undisputed Facts (*see* Def. Motion at 2–3), Plaintiff's Response to Defendant's Statement of Undisputed Facts (*see* Plaintiff's Amended Statement of Material Facts in Dispute, D.E. 106), and Defendant's Reply in Support of its Statement of Undisputed Facts (D.E. 101). The facts are undisputed unless otherwise noted.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable fact-finder could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the movant makes this initial demonstration, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548; *see also* Fed.R.Civ.P. 56(c). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. 1348. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

## III. Applicable Law

"Federal maritime law applies to actions arising from alleged torts 'committed aboard a ship sailing in navigable waters.'" *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F.Supp.2d 1308, 1315 (S.D.Fla.2011) (citing *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1321 (11th Cir.1989)).

This principle extends to torts occurring at offshore locations or ports-of-call during the course of a cruise. *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir.2004). *See also Isbell v. Carnival Corp.*, 462 F.Supp.2d 1232, 1236 (S.D.Fla.2006) (applying federal maritime law in negligence action against cruise line company stemming from accident occurring during an offshore excursion).

General maritime law is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *See East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864–65, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). *See also Brockington v. Certified Elec., Inc.*, 903 F.2d 1523, 1530 (11th Cir.1990). In the absence of well-developed maritime law pertaining to [Plaintiff's] negligence claims, [the Court] will incorporate general common law principles and Florida state law to the extent they do not conflict with federal maritime law. See *Just v. Chambers*, 312 U.S. 383, 388, 61 S.Ct. 687, 85 L.Ed. 903 (1941) ("With respect to maritime torts we have held that the State may modify or supplement the maritime law by creating liability which a court of admiralty will recognize and enforce when the state action is not hostile to the characteristic features of the maritime law or inconsistent with federal legislation."). *See also Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2nd Cir.2004) ("federal maritime law incorporates common law negligence principles generally, and [state] law in particular"); *Wells v. Liddy*, 186 F.3d 505, 525 (4th Cir.1999) (in the absence of a well-defined body of maritime law relating to

a particular claim, the general maritime law may be supplemented by either state law or general common law principles).

*Id.; see also Hesterly v. Royal Caribbean Cruises, Ltd.,* 515 F.Supp.2d 1278, 1282 (S.D.Fla.2007).

## IV. Discussion

Defendant argues in its Motion that it is entitled to summary judgment because "[t]here is no record evidence ... which shows that Carnival breached its duty owed to Plaintiff." (Def. Motion at 5.) Plaintiff disagrees and argues in her Motion that the Court should (1) preclude the Defense from arguing that Plaintiff was comparatively negligent and (2) determine as a matter of law that she was not comparatively negligent. (Pla. Motion at 4.) The Court will discuss each Motion in turn.

### A. Defendant's Motion for Summary Judgment

Defendant argues in its Motion that it is entitled to summary judgment because the record does not establish that Defendant breached its duty owed to Plaintiff. (Def. Motion at 5.) Specifically, it argues that: (1) Plaintiff has failed to establish that a

gap between the carpet and the metal nose existed, was hazardous, or that Carnival had notice of it; (2) Plaintiff has failed to establish that the handrail was too large, was hazardous, or that Carnival had notice of it; and (3) Plaintiff cannot sustain a "negligent maintenance" theory.[2] (Def. Motion at 6–10.) In response, Plaintiff argues that: (1) there is no reasonable dispute as to the offending stairway lip's existence because it "was inspected, measured, and documented by experts," (Response at 10); (2) Defendant created the condition, so notice is not required, (*id.* at 13); (3) Defendant was aware that similar instances had occurred on other Carnival-owned ships in the *Paradise's* fleet (known as the "*Fantasy* class"),[3] (*id.* at 14); and (4) the handrail is non-compliant with generally-accepted safety recommendations, (*id.* at 16–17).

■ "To satisfy the burden of proof in a negligence action, plaintiff must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages." *Isbell,* 462 F.Supp.2d at 1236 (citing *Hasenfus v. Secord,* 962

---

**2.** Defendant also argues that it had no duty to warn because the gap/lip was an open and obvious danger. (*See* Def. Motion at 8–10.) However, the crux of the argument is that Plaintiff was not looking where she was going. (*See id.* at 10 ("Carnival had no duty to warn the Plaintiff of a condition of which she should have noticed had she looked where she was stepping.").) This argument will be addressed in Section IV(B), *infra,* in regard to Plaintiff's Motion for Partial Summary Judgment. Insofar as a ruling in warranted on this issue at this stage, the Court finds Defendant is not entitled to summary judgment because (1) it provides *no* evidence that the hazardous condition was open and obvious, and (2) Defendant concedes that Plaintiff's expert witness testified that the gap was not noticeable to the naked eye, i.e., not "open

and obvious." (Def. Response ¶¶ 7–8; Depo. of Frank Fore, D.E. 65–2 at 122.)

Defendant also argues that Plaintiff cannot prove negligence per se, but Plaintiff's negligence per se claim was previously dismissed by the Court's Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Amended Complaint. (*See* D.E. 84 at 8.)

**3.** According to Defendant's 30(b)(6) representative, Lisa McCabe, a class of vessels consists of more than one ship built in the same ship yard. (Depo. of Lisa McCabe, D.E. 81–1 at 22.) There are roughly eight ships in Carnival's "*Fantasy* " class, including the *Paradise.* (*Id.*) All of the ships in the *Fantasy* class have the same general layout, (*id.* at 23), including stair towers, (*id.* at 72).

F.2d 1556, 1559–60 (11th Cir.1992)). Defendant argues that Plaintiff has not presented evidence that it breached the duty it owed to Plaintiff.

■ The Court must first discuss the standard of care applicable to this case. Plaintiff spends six pages of her Response zealously arguing that Defendant, as a common carrier, owes Plaintiff (and all fare-paying passengers) a heightened duty of care. (Pla. Response at 2–7.) Whatever the merits of that argument, this Court is bound by Eleventh Circuit precedent which clearly establishes that the duty of care a cruise ship owes its passengers is "ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition[.]" *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir.1989); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir.2012); *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 909 (11th Cir.2004); *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1356 (11th Cir.1990). Thus, here, Defendant owed Plaintiff the duty of ordinary care under the circumstances.

**1. Whether Plaintiff has established that the gap existed, was hazardous, or that Defendant had notice.**

■ First, Defendant argues that Plaintiff has failed to establish that: (1) the gap existed at the time of her fall; (2) even if it did exist at the time of her fall, that it was hazardous; and (3) even if it did exist and was hazardous, that Carnival had actual or constructive notice of it before Plaintiff's accident. (Def. Motion at 6–8 (citing Order on Motion for Summary Judgment, D.E. 75, *Williams v. Carnival Corp.*, Case No. 13–24686–Civ–UNGARO (S.D.Fla. Oct. 7, 2014)) (hereafter, "*Williams* Or-

der".)) Plaintiff distinguishes *Williams* and asserts that the evidence supports a finding that the gap existed, was hazardous, and Defendant had notice. (Response at 10–15.)

In *Williams*, the plaintiff fell on a Carnival ship after the heel of her shoe caught in a quarter-inch gap between the carpet and metal nosing at the edge of the top step. *See Williams* Order at 1. Judge Ungaro granted the defendant summary judgment on the grounds that the plaintiff provided no evidence that the gap was there at the time of her accident (other than the fact that she tripped); that even assuming the gap existed, there was no evidence that it was hazardous; and even assuming the gap was there and it was hazardous, that there was no evidence that the defendant had notice other than evidence showing that other similar accidents had occurred. *Id.* at 4.

**a. Evidence the gap existed at the time of the accident**

Here, the Court finds that Plaintiff has presented sufficient evidence to create a reasonable dispute as to whether the gap existed at the time of her fall. Plaintiff's expert, Frank Fore, testified that he inspected, measured, and photographed the scene of the accident. (Aff. of Frank Fore ("Fore Aff."), D.E. 52–1, ¶¶ 41–55.) Specifically, he testified that:

> The leading edge of each tread has a metal "wear strip" or nosing. The carpet is laid underneath the back edges of the nosings, as opposed to butting up against them.... (*Id.* ¶ 44.)

> The metal nosings are slightly beveled, downward, at the back edge (facing descending pedestrian traffic). (*Id.* ¶ 45.)

> I measured the height of the nosing [where Plaintiff's accident occurred] and found it to be approximately 1/2 inch

higher than the maximum height of the adjacent carpet.... (*Id.* ¶ 48.)

The "maximum height of the carpet" in this location reduces significantly, however, when weight is placed on the carpet.... (*Id.* ¶ 49.)

Where the plaintiff tripped, there is a significant **gap** between the bottom edge of the bevel and the carpet.... (*Id.* ¶ 50.)

The gap between the bottom edge of the bevel and the carpet presents a sharp, dangerous "lip" to passengers descending the stairway. (*Id.* ¶ 51.)

The last time the carpet was replaced was in December 2010 (by Carnival employees *who were looking at the nosing and carpet at the time*). (*Id.* ¶ 54.)

According to Carnival's corporate deposition, the tread and nosing in question was in its "normal condition" at the time of the incident and at the time of my inspection. (*Id.* ¶ 55.)

The record contains many photographs of the exact location of the accident. (*See id;* *see also* Pla. Amended Statement of Material Facts ("Pla. Am. Facts"), D.E. 106 at 2–4; Pla. Motion at 2–3.) The photographs demonstrate the severity of the gap using a ruler, a level, and a legal pad slid under the lip of the metal nosing. (*See id.*)

■ In its Reply, Defendant maintains that the record does not reflect that the gap was present prior to Plaintiff's accident. (Reply at 1.) However, the law does not require a slip-and-fall victim to gather evidence of the risk-creating condition immediately before the accident took place to survive summary judgment. Significantly, Plaintiff completed a passenger injury statement in the ship's infirmary after her fall. (Depo. of Monica Petisco[4] ("Petisco Depo."), D.E. 80–1 at 119.) The questionnaire asked "What do you believe caused this accident?" Plaintiff answered: "The lip at the staircase caught my shoe. The lip should be more flat." (*Id.* at 120.) The Court finds that Plaintiff's statement is evidence that the gap existed before her accident.

Furthermore, Defendant's engineer, Bryan Edmond, testified that (1) he inspected the accident site, (2) there was a "slight increase in elevation right at the leaning [sic] edge" of the top stair, and (3) he could not eliminate the possibility that there is a way Plaintiff's shoe "could be configured against that lip to cause it to arrest her shoe." (Depo. of Bryan Edmond ("Edmond Depo."), D.E. 82–1 at 21.) He further testified that it was his understanding that the configuration of the nosing had not changed between the time of Plaintiff's accident on August 29, 2013, and his investigation on October 13, 2014. (*Id.* at 22.) Finally, it is undisputed that the gap existed at the time of Plaintiff's investigation on March 3, 2014. (*See* Fore Aff., D.E. 52–1 ¶¶ 41–59.) Thus, the Court finds that the record evidence, when considered in the light most favorable to Plaintiff, is sufficient for a jury to find that the gap existed before Plaintiff's accident.

#### b. Evidence the gap and lip were hazardous

Plaintiff also presents evidence that the gap and lip[5] were hazardous. Plaintiff's

---

4. Monica Petisco is a claims representative for Carnival. (*See* Petisco Depo at 5.) Her job entails handling passenger claims, "either directly with the guests if they write in to us, or I deal with their attorney if they are represented, before the case is going to litigation." (*Id.*)

5. Defendant's engineer agreed with the following definition of "lip," as it is used here: "a change in elevation in a pedestrian walking surface which can catch your foot and cause you to fall." (Edmond Depo., D.E. 82–1 at 23.)

expert testified that "[t]he gap between the bottom edge of the bevel and the carpet presents a sharp, *dangerous* 'lip' to passengers descending the stairway." (*Id.* ¶ 51 (emphasis added).) She presented pictures "demonstrat[ing] how the lip can arrest a shod foot[.]" (*Id.* ¶ 52.) The pictures also support Plaintiff's argument that the lip "is effectively camouflaged from descending passengers by the carpet when there is no weight on the carpet." (*Id.* ¶ 53.)

█ Additionally, Plaintiff provides evidence that the nosing on the stairs in question violate various industry safety standards. "[T]he law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook v. Royal Caribbean Cruises, Ltd.*, No. 11-20723-CIV, 2012 WL 1792628, at *3 (S.D.Fla. May 15, 2012) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975); *Frazier v. Continental Oil Co.*, 568 F.2d 378 (5th Cir.1978)); *see also Giorgio v. Holland Am. Line, Inc.*, No. C05-0038JLR, 2006 WL 1042003, at *2 (W.D.Wash. Apr. 4, 2006) ("Regulations that are not binding by force of law, and therefore do not establish negligence per se, may nonetheless be admitted for the purpose of aiding the finder of fact in determining the applicable standard of care.").

Plaintiff points to National Fire Protection Association (NFPA) Standard NFPA-301, titled "Code for Safety to Life from Fire on Merchant Vessels," which is a voluntary safety standard that provides, in relevant part: "Stair treads shall be uniformly slip-resistant and shall be free of projections or lips that could trip stair users." NFPA 301, Code for Safety to Life from Fire on Merchant Vessels, ¶ 5-2.2.3.4 (1998).[6,7] Plaintiff's expert testified that this Code "unquestionably" applies to large passenger vessels. (Fore Aff., D.E. 52-1, ¶ 33.)

Plaintiff also points to the American Society for Testing and Materials (ASTM) Standard ASTM-F1166-07, titled "Standard Practice for Human Engineering Design for Marine Systems, Equipment, and Facilities," which provides, in relevant part: "The top tread shall be flush with the walking surface to which the stair is attached." ASTM Standard ASTM-F1166-07, ¶ 11.2.5 (2013 ed.).[8] Plaintiff's expert also notes that the ASTM Standard Practice of Safe Walking Surfaces provides the following recommendations for "walkways," including stair treads:

**4.2** *Walkway Changes in Level:*

**4.2.1** Adjoining walkway surfaces shall be made flush and fair, whenever possible and for new construction and existing facilities to the extent practicable.

**4.2.3** Changes in levels between 1/4 and 1/2 inch . . . shall be beveled with a slope no greater than 1:2 (rise: run).

**4.2.4** Changes in levels greater than 1/2 inch shall be transitioned by means of a ramp. . . .

**4.3.1** Carpet shall be maintained so as not to create a pedestrian hazard.

---

**6.** A copy of the 1998 Edition of this Code is attached to Plaintiff's Response at D.E. 86-4.

**7.** A copy of the 2013 Edition of this Code is attached to Frank Fore's Affidavit at D.E. 52-5. The applicable provision of the 2013 Edition of the Code is paragraph 7.2.2.3.4, which mirrors the language of paragraph 5-2.2.3.4 of the 1998 version. (*See* D.E. 52-5 at 15.)

**8.** A copy of the relevant portion of the ASTM Standard is attached to Plaintiff's Response at D.E. 86-3.

4.3.2 Carpet on floor surfaces shall be routinely inspected.... Periodic inspection is particularly important at step nosing edges.

ASTM Designation: F 1637–95, Standard Practice for Safe Walking Surfaces (1996).[9] Plaintiff provides evidence from Defendant's 30(b)(6) representative that Carnival did not perform periodic inspections of the step nosings. (*See* Petisco Depo., D.E. 80–1 at 86–87 (testifying that Carnival has no internal policy or company standard of periodic inspection of the metal nosings).)

Plaintiff further argues that Carnival's own internal flooring standards require that the carpet be flush with adjacent stairway nosings. Carnival's claims representative, Monica Petisco, testified about one of Carnival's written safety policies that states: "Any area intended for the location of carpeting or mats shall be designed in such a way as to allow the carpet or mat to be flush with the flooring surface to which it is placed." (Petisco Depo., D.E. 80–1 at 90 (quoting Carnival Company Safety Standard, Safety 003, Guest Common Area Flooring Materials (June 27, 2008))).[10]

Considered in the light most favorable to Plaintiff, the record evidence is sufficient for a reasonable jury to find that the gap and lip were hazardous.

### c. Evidence of Defendant's actual or constructive knowledge

Finally, Plaintiff presents evidence that Defendant had actual or constructive knowledge that the gap existed and was hazardous. For example, Defendant places "Watch Your Step" warning signs in comparable locations on other *Fantasy*-class ships. (*See* Fore Aff., D.E. 52–1

¶ 71.) Plaintiff provides a photograph of a comparable staircase on the *M/S Carnival Ecstasy* where a yellow "Watch Your Step" sign exists on the metal nosing of the top step of the flight—precisely where Plaintiff tripped on the *Paradise*. (*Id.*)

Additionally, and significantly, there is evidence that other *Paradise* passengers had suffered nearly-identical accidents prior to Plaintiff's fall. Monica Petisco testified that in June of 2010, a passenger fell down a main stairway on the *Paradise* after his left foot caught on a metal nosing strip. (Petisco Depo., D.E. 80–1 at 70.) Again in December of 2010, a *Paradise* passenger fell down a stairway after the heel of her shoe caught on the metal nosing strip. (*Id.* at 71.) Both of these accidents occurred on stairs with nosings in their normal condition, i.e., not loose or pulled up. (*Id.* at 73.)

Petisco further testified about nearly-identical accidents occurring on other *Fantasy*-class ships. For example, in January 2012, a similar accident occurred on the *Ecstasy*—the *Paradise's* sister ship—on a rubber nosing strip in the corresponding stair case and corresponding deck as Plaintiff's accident. (*See id.* at 82–83.) After that incident, the *Ecstasy*'s staff captain "instructed the refurbishing team to periodically check all stairs for any discrepancy, rubber strips, and rectifying them instantaneously." (*Id.* at 84.)[11]

Furthermore, In April 2010, a 13 year-old passenger on the *Carnival Elation* tripped on a metal nosing strip while descending a stairway and twisted her ankle. (*Id.* at 94.) In December 2011, a 50 year-old female passenger on the *Elation* was

---

9. A copy of this ASTM Standard is attached to Frank Fore's Affidavit at D.E. 52–9.

10. A copy of this Safety Standard is attached to Frank Fore's Affidavit at D.E. 52–10.

11. There is no documentation as to whether any refurbishing was ordered on the Paradise. (*Id.* at 86.)

descending the corresponding staircase to Plaintiff's incident and caught the tip of her shoe on a metal strip at the edge of the step. (*Id.* at 96.) In February 2012, a 63 year-old female descending a main stairwell on the *Elation* caught her right shoe in a metal strip, resulting in injury. (*Id.* at 98.) In December 2009 and July 2006, guests descending a main stairway on the *Carnival Fantasy* caught their shoe heels on the edge of a step. (*Id.* at 100.) In January 2010 a passenger descending a main stairway on the *Carnival Inspiration* was injured when her shoe got caught on the edge of a stair. (*Id.* at 108.)[12]

Each of these incidents was discussed at a management committee meeting shortly after they occurred. (*Id.* at 69–72, 75.) After each incident, an investigation was performed, an accident report was generated, and a determination of the "root cause" of each accident was made, but that information is deemed "privileged." (*Id.* at 71–72.)

Additionally, as previously discussed, Plaintiff has presented evidence that the at-issue stairs violated voluntary safety standards which, although non-binding, may be used as evidence of Defendant's constructive knowledge. *See Cook*, 2012 WL 1792628, at *3; *Donlon v. Gluck Grp., LLC*, No. 09–5379 (JEI/KMW), 2011 WL 6020574, at *6 (D.N.J. Dec. 2, 2011) (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the American Society for Testing and Materials were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

Finally, Plaintiff alleges that Defendant created the hazardous condition. Specifically, Plaintiff states that:

b. The carpet is laid underneath the back edges of the nosings, as opposed to butting up against them, as fairly and accurately shown in the following photo: [photo omitted] *Affidavit of Frank Fore, P.E.*, ¶¶ 50–51 [D.E. 52–1]

. . .

e. The carpet in this stairway section was last replaced on December 5, 2010 by a group of Carnival employees known as the "riding team." *Carnival 30(b)(6) deposition (McCabe)*, at p. 51, line 20 to p. 52, line 2 [D.E. 81–1]

f. Carnival employees placed the carpet *under* the stairway nosings. *Carnival 30(b)(6) deposition (McCabe)*, at p. 129, lines 2 –24 [D.E. 81–1].

(Pla. Am. Facts, D.E. 106 ¶ 5(b), (e), & (f).) These facts are undisputed. (*See* Def. Reply, D.E. 101 at 3 ¶ 5(b),(e), & (f).) " 'Where it is alleged . . . that defendant created an unsafe or foreseeably hazardous condition, a plaintiff need not prove notice in order to show negligence.' " *McLean v. Carnival Corp.*, No. 12–24295–

---

12. Petisco also testified about similar incidents that occurred after Plaintiff's accident. For example, she confirmed that about two months after Plaintiff's injury, another *Paradise* passenger—descending the same stairway on which Plaintiff's accident occurred—tripped on a metal nosing strip. (*Id.* at 78.) Additionally, in November 2013, a child's flip flop got caught on a metal strip on the second step from the top of a similar staircase on the *Ecstasy*. (*Id.* at 92–93.) In October 2013, a 9 year-old child tripped over a metal nosing while descending a main stairway. (*Id.* at 99.) In January 2014, a *Fantasy* guest descending the corresponding stairway to Plaintiff's incident caught her sandal in the edge of a stair and was injured. (*Id.* at 104.)

CIV, 2013 WL 1024257, at *4–5 (S.D.Fla. Mar. 14, 2013) (quoting *Baker v. Carnival Corp.*, No 06–21527–CIV, 2006 WL 3519093, at *3 (S.D.Fla. Dec. 6, 2006) (citing *Rockey v. Caribbean Cruises, Ltd.*, No. 99–708–CIV–Gold, 2001 WL 420993, at *4–5 (S.D.Fla. Feb. 20, 2001)), 11–23323–CIV, 2012 WL 920675, at *3–4 (S.D.Fla. Mar. 19, 2012) *overruled on other grounds by Doe v. Royal Caribbean Cruises, Ltd.*, No 11–23323–CIV, 2012 WL 920675, at *3–4 (S.D. Fla. Mar. 19, 2012)); *see also Caldwell v. Carnival Corp.*, 944 F.Supp.2d 1219, 1224 (S.D.Fla.2013).

Based on the prior incidents and the evidence of non-compliance with the various safety standards, the Court concludes that a reasonable jury could find that Defendant had at least constructive knowledge of the gap. Having already found that a reasonable jury could find that the gap existed before Plaintiff fell, and that the gap was hazardous, the Court finds that there is a genuine issue of material fact as to whether Defendant breached its duty of ordinary care under the circumstances with respect to the gap between the carpet and the lip of the metal nosing.

### 2. Whether the handrail was too large, was hazardous, or that Carnival had notice of it.

■ Next, Defendant argues that Plaintiff has presented no evidence that the handrail was too large, was hazardous, or, alternatively, that Carnival had notice that it was too large and hazardous. (Def. Motion at 8.) Plaintiff argues that there is evidence that the handrail was too big· to permit a person to grasp completely around it, and that "[g]raspable handrails have been scientifically demonstrated to significantly reduce of mitigate falls on stairways." (Pla. Response at 16.) She

also argues that the handrail is non-compliant with generally-accepted safety recommendations, and such recommendations provide vessel operators with fair notice "of what could happen if the safety recommendations are not followed." (*Id.* at 17.) Defendant argues that the only binding industry standard merely requires that there be a handrail, not that it have specific dimensions or be "graspable to the point where a person can completely reach around it." (Reply at 8.)

■ As previously noted, "the law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook*, 2012 WL 1792628, at *3 (citing *Muncie Aviation Corp.*, 519 F.2d 1178; *Frazier*, 568 F.2d 378); *see also Giorgio*, 2006 WL 1042003, at *2. Such guidelines are also probative of the defendant's constructive knowledge of the allegedly hazardous condition. *See Cook*, 2012 WL 1792628, at ·*3; *Donlon*, 2011 WL 6020574, at *6.

Plaintiff points to an International Maritime Organization ("IMO") recommendation that handrails in stairways on passenger ships should be "round in section with diameter of 45–50 mm in easy to grip material and in contrasting colour...." *See* International Maritime Organization, IMO MSC/Circ. 735, *Recommendation on the Design and Operation of Passenger Ships to Respond to Elderly and Disabled Persons' Needs* (June 26, 1996).[13] This recommendation applies to cruise ships. (*See* Edmond Depo., D.E. 82–1 at 193–95, 216.) Section 1.2.3.2 of the IMO's International Safety Management Code provides that a company's safety management system[14] "should ensure ... that applicable

---

**13.** ·A copy of the circulation can be found at D.E. 86–1.

**14.** "'Safety management system' means a structured and documented system enabling

codes, guidelines and standards recommended by the [IMO] ... are taken into account." International Safety Management Code § 1.2.3.2 (2010), *available at* http://www.imo.org/OurWork/Human Element/SafetyManagement/Pages/ ISMCode.aspx (last visited Jan. 23, 2015). Defendant's expert engineer testified that the focus of this specific recommendation "is obviously for passenger ships that are going to be subject to SOLAS," including cruise ships. (Edmond Depo., D.E. 82–1 at 194–95.)

Plaintiff provides pictures of the handrail, including a picture of Plaintiff herself holding the handrail, which shows that it is asymmetrical—i.e., not round. (*See* Fore Aff., D.E. 52–1 ¶¶ 62–63.) Defendant's expert stated that 45 to 50 millimeters—the IMO recommendation for safe handrails— equates to 1.77 to 1.97 inches in diameter, which in turn equates to a circumference of 6.2 inches. (Edmond Depo., D.E. 82–1 at 219.) Although the at-issue handrail is asymmetrical (and therefore has no "circumference"), the perimeter of the handrail is 10.5 inches, which Plaintiff's expert states is *"not* reasonable, acceptable, or customary from a safety standpoint[.]"[15] (Fore Aff., D.E. 52–1 ¶ 62.) Plaintiff's expert states that *"there is no way* the subject handrail could have afforded the plaintiff or any other typical woman the type of 'power grip' that has been scientifically shown to be capable of averting and/or mitigating stairway falls." (*Id.* ¶ 65 (citing Maki, B.E., *et al.,* "Efficacy of Handrails in Preventing Stairway Falls: A New Experimental Approach." *Safety Science* 28 (1998)).) Defendant's expert conceded

that "the overall size, shapes, and diameter of the handrail does not permit a person to grasp around the rail." (Edmond Depo., D.E. 82–1 at 218.)

Based on the IMO recommendation and the record evidence, a reasonable jury could conclude that the handrail was too large, hazardous, and that Defendant knew it was too large and hazardous. *See Muncie Aviation Corp.,* 519 F.2d at 1181 (holding that to the extent the defendant's pilot failed to consult advisory materials issued by the Federal Aviation Administration, or failed to follow their recommendations, "the jury could permissibly infer that he failed to meet the appropriate standard of due care"); *Frazier,* 568 F.2d at 381–82 (holding that the district court erroneously excluded testimony concerning violations of industry standards to establish the defendant's negligence); *see also Donlon,* 2011 WL 6020574, at *6 (denying summary judgment motion filed by houseboat manufacturer in lawsuit filed by person who fell down the stairs of a houseboat, holding that non-binding standards promulgated by the ASTM were admissible because a jury could use the evidence to conclude that the stairs "were defectively designed" and because the standards put defendant "on constructive notice of the potential danger of the stairs").

### 3. Whether Plaintiff may proceed on a theory of "Negligent Maintenance"

 Next, Defendant argues that Plaintiff cannot prove negligence based on a theory of negligent maintenance. (Def. Motion at 10.) Specifically, it argues that

---

Company personnel to implement effectively the Company safety and environmental protection policy." IMO, International Safety Management Code § 1.1.4 (2010), *available at* http://www.imo.org/OurWork/Human Element/SafetyManagement/Pages/ISMCode. aspx (last visited Jan. 23, 2015).

**15.** Defendant's expert engineer conceded that "perimeter" is roughly synonymous with "circumference." (Aff. of Bryan Edmond, D.E. 82–1 at 219.)

"Plaintiff has not established any record evidence that Carnival failed to maintain or failed to inspect the subject stairs." (*Id.*) Plaintiff argues that Defendant's "assertion overlooks Carnival 30(b)(6) testimony that, prior to the subject incident, Carnival had no policy that required crew to systematically check stairs for nosing discrepancies." (Response at 16 (citing Petisco Depo., D.E. 80–1 at 86).) Although neither party cites any case law regarding the issue, "negligent maintenance" is a viable theory of breach and proximate causation in a maritime negligence suit. *See, e.g., Long v. Celebrity Cruises, Inc.*, 982 F.Supp.2d 1313, 1317 (S.D.Fla.2013); *Caldwell v. Carnival Corp.*, 944 F.Supp.2d 1219, 1224 (S.D.Fla. 2013); *McLean v. Carnival Corp.*, No. 12–24295, 2013 WL 1024257, at *4–5 (S.D.Fla. Mar. 14, 2013).

Again, "the law in the Eleventh Circuit, as established by the former Fifth Circuit, is that advisory guidelines and recommendations, while not conclusive, are admissible as bearing on the standard of care in determining negligence." *Cook*, 2012 WL 1792628, at *3 (citing *Muncie Aviation Corp.*, 519 F.2d 1178; *Frazier*, 568 F.2d 378); *see also Giorgio*, 2006 WL 1042003, at *2. Such guidelines are also probative of the defendant's constructive knowledge of the allegedly hazardous condition. *See Cook*, 2012 WL 1792628, at *3; *Donlon*, 2011 WL 6020574, at *6.

Plaintiff has provided evidence of industry standards recommending regular inspections of the very location that allegedly caused Plaintiff's fall. (*See* Fore Aff., D.E. 52–1 ¶ 60.) Specifically, the ASTM Standard Practice of Safe Walking Surfaces recommends that "[c]arpet on floor surfaces shall be routinely inspected.... *Periodic inspection is particularly important at step nosing edges.*" ASTM Desig-

nation: F 1637–95, § 4.3.2, Standard Practice for Safe Walking Surfaces (1996) (emphasis added).[16] These guidelines apply to "walkways," which is defined, in relevant part, as "walking surfaces constructed for pedestrian usage including floors, ... stair treads...." *Id.* § 3.1.14. Plaintiff also presented evidence that Defendant did *not* periodically inspect the carpet. Specifically, Monica Petisco testified that there was no internal policy or company standard of periodic inspection of the metal nosings. (Petisco Depo., D.E. 80–1 at 86–87.) Accordingly, Plaintiff has presented evidence from which a reasonable jury could conclude that Defendant breached its duty of reasonable care to her, and summary judgment is not appropriate. *See Long*, 982 F.Supp.2d at 1317 (concluding, where plaintiff was injured after her shoe caught on metal stair nosing while descending a flight of stairs on a cruise ship, "that a genuine issue of fact exists as to whether the improper and negligent maintenance of the nosing was the cause of Plaintiffs fall").

**B. Plaintiff's Motion for Partial Summary Judgment**

 Plaintiff argues in her Motion that the Court should (1) preclude the Defense from arguing that Plaintiff was comparatively negligent and (2) determine as a matter of law that she was not. (Pla. Motion at 4.) Plaintiff contends that "all [she] did was descend a flight of stairs normally, *with her left hand on the handrail.* She couldn't see the metal nosing lip that snagged her shoe because it was camouflaged by the carpet. No alcohol was involved." (*Id.*)

Defendant argues that Plaintiff's Motion should be denied because there is evidence in the record from which a reasonable jury could conclude that Plaintiff was compara-

**16.** A copy is available at D.E. 52–9.

tively negligent. (Def. Response at 5.) Defendant cites the following excerpts from Plaintiff's Deposition testimony:

Q. Do you recall where you were looking when you fell?

A. Straight Ahead.

(Depo. of Leeann Holderbaum ("Holderbaum Depo"), D.E. 65–1 at 32.)

Q. Did you notice that the stairs had metal stripping on the edges of them before you fell?

A. No. I didn't even—

Q. And is that because you weren't looking at the stairs, you were

looking forward?

A. Absolutely. I had no idea. I wouldn't be looking at the stairs individually or together.

(*Id.* at 34.) Thus, Defendant claims that Plaintiff "was not looking where she was walking at the time of the accident[.]" (Def. Response at 2 ¶ 3.) Plaintiff, however, points to a difference excerpt from her deposition in which she testified that she "was looking going down the stairs." (Holderbaum Depo., D.E. 65–1 at 33.)

 Maritime law recognizes the doctrine of comparative negligence, *United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 411, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975), including personal injury cases, *see Smith & Kelly Co. v. S/S Concordia TADJ,* 718 F.2d 1022, 1030 (11th Cir.1983). Defendant's Seventh Affirmative Defense

asserts that "its liability, if any, must be reduced by the comparative amount of liability and/or fault attributable to the Plaintiff." (Answer, D.E. 107 at 5.)

The Court finds that a genuine issue of material fact exists as to the issue of comparative fault. Defendant has presented evidence from which a jury could reasonably find that Plaintiff was not exercising reasonable care while descending the stairs. (*See* Def. Response at 2 ¶ 3.) Specifically, a reasonable jury could find that Plaintiff was not, but should have been, looking at the stairs as she descended them, and her failure to do so contributed to her injury. Accordingly, summary judgment is not appropriate.

## V. Conclusion

Accordingly, it is **ORDERED AND AD-JUDGED** that:

1. Defendant's Motion for Summary Judgment (D.E. 65), filed December 1, 2014, is **DENIED;** and

2. Plaintiff's Motion for Partial Summary Judgment (D.E. 71), filed December 2, 2014, is **DENIED.**